**FORD MOTOR COMPANY, Appellant,**

v.

**Ezequiel CASTILLO, Individually, Maria de los Angeles, Individually and as Next Friend of Ashley Castillo and Ezequiel Castillo, Jr., and Rosa Silvia Martinez, Individually, Appellees.**

No. 13–04–638–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

June 8, 2006.

Rehearing Overruled Aug. 24, 2006.

Craig A. Morgan, Michael W. Eady, Thompson, Coe, Cousins & Irons, Austin, for appellant.

Ricardo G. Benavides, Juan A. Gonzalez, Law Office of Mark A. Cantu, McAllen, Roger W. Hughes, Harlingen, for appellees.

Before Chief Justice VALDEZ and Justices CASTILLO and GARZA.

## OPINION

Opinion by Justice GARZA.

Ford Motor Company appeals a final judgment entered against it for breach of a settlement agreement. We affirm the judgment.

### Background

Procedurally, this is an unusually-postured case. The Plaintiffs originally sued Ford for products liability after a roll-over accident involving a Ford sports-utility vehicle.[1] A jury trial was held in Cameron County. While the jury was in deliberations, the trial court received a note from the presiding juror, which asked, "What is the maximum amount that can be awarded?" The trial court reviewed the note and then read it into the record.

Having heard the question, the parties and their counsel commenced settlement

---

1. The Plaintiffs are Ezequiel Castillo, individually, Maria de los Angeles Castillo, individually and as next friend for Ashley Castillo and Ezequiel Castillo, Jr., and Rosa Silvia Martinez, individually.

discussions and almost immediately reached an agreement. They announced the agreement to the trial court on the record: Ford promised to pay the Plaintiffs a confidential sum to drop their claims and to release Ford from liability.

The trial court recognized the parties' agreement, and the jury was brought back into the courtroom, informed that the case had settled, and then discharged. The trial court thanked the jurors for their service and told them that they were free to discuss the case with counsel and the parties if they wished to do so.

After the jury was discharged, counsel for Ford interviewed the jurors and learned information that made Ford reconsider the settlement agreement. Apparently, the jury had not answered the charge's two questions on liability when the note about damages was sent out. According to Ford, the jury's consideration of damages—as demonstrated by the note—was improper because the charge specifically instructed the jury to consider damages only if it first answered "yes" to one of the liability questions. Ford maintained that the jury's disregard for the instruction amounted to misconduct.

Ford's information also indicated that the note was sent by the presiding juror without the knowledge or consent of the other jurors. Ford suspected that there may have been an improper outside influence on the jury. It also came to believe that, despite the note, the jury might have found no liability if its deliberations had not been interrupted by the parties' settlement.

Ford's counsel openly contemplated fraudulent inducement and mutual mistake as justifications for reneging on the settlement. Ford eventually filed a motion to delay settlement, requesting additional time to conduct discovery regarding the jury's deliberations and the circumstances of the note which had prompted the parties to settle. The motion read in part, "Ford requests that it be allowed to take discovery, or that the Court independently undertake discovery, on the issue of outside influence." Attached to the motion were four affidavits from jurors Ford had contacted.

At the hearing on Ford's motion to delay, counsel for Ford reiterated and expounded upon the request for court-sanctioned discovery:

[I]t is to me something that should be of concern to the Court if there was any outside influence, and it may be that nothing will show up about it at all, but there's only one way to find out and that's to have either the Court do its own investigation and or the Court allow us to bring the jurors in and have a hearing in front of the Court and or to depose them and then come back to the Court with our findings and make a determination as to where we go from there.

The trial court stated that it had reviewed the juror affidavits submitted by Ford. The court also noted that it could not discern "anything specific" to indicate an improper outside influence, but also could not dismiss the possibility that "something could have gone wrong." In the trial court's words

[I]t does bother me that I have affidavits here, you know, that there are suggestions, not anything specific, but the fact that ... these affidavits are here ... does bother me ... [The jurors] do have a right to talk to the lawyers if they want to talk to the lawyers. They have a right to make an affidavit if they want to make an affidavit....

[T]he affidavits [submitted by Ford] ... are proper and I think that ... [they are] sufficient ... to apprise the Court

of something that could have gone wrong.

The trial court asked for case law on the relief requested in Ford's motion to delay:

> **The Court:** Now, ... I want you to tell me now if there is any case similar that you all know about....
>
> **Counsel for Plaintiffs:** Not from the plaintiffs, Your Honor....
>
> **Counsel for Ford:** Your Honor, the answer to that is I don't. And I think that what we need to look at if the Court can give us an opportunity to do some further research into that and see. Look outside the State of Texas because inside the State of Texas there's nothing, but outside ... Texas if we get a chance to look at it we may be able [to] find something that addresses this same situation.

The trial court ultimately denied Ford's motion to delay but nevertheless encouraged Ford to conduct its own investigation:

> **The Court:** I've read the affidavits[.] [T]hey don't tell me anything[,] only that there could have been something[,] and I'm not going to be the first judge to do this and disturb the jury.... I just don't find any good reason ... to do that and I'll tell you right now. If I would have had something specific here, a lot of you guys would have been in trouble if it did happen.... I can't do it without any authority and so you all follow the rules you all need to follow, do whatever you need to do....

After the hearing, Ford continued its refusal to honor the settlement agreement. Apparently following the trial court's recommendation, Ford also continued its independent investigation into the jury's deliberations.

Eventually, the Plaintiffs filed a motion to enforce the settlement agreement. At a hearing on the motion, counsel for Ford assured the trial court that, despite its prior refusals, Ford would now pay the settlement amount. Counsel advised the court that Ford's performance would be delayed by two weeks because Ford needed to draft documents for the parties to execute which would release Ford from the case. Counsel did not reurge Ford's previous request for further discovery. In fact, counsel assured the trial court that Ford would pay the settlement amount, thus leaving the impression that no further discovery would be necessary. In counsel's words, "Your Honor, we have no problem to—in dealing with this."

The court granted Ford's request for additional time and stated that performance would be excused for two weeks so that counsel for Ford could draw up release documents for the parties to execute. The relief requested in the Plaintiffs' motion to enforce settlement was otherwise granted. Ford was directed to deposit the settlement amount into a qualified settlement fund as soon as the release documents were executed.

Despite counsel's assurances, Ford subsequently reneged and reurged its grounds for avoiding the settlement agreement. It filed a motion asking the trial court to set aside the settlement agreement and to grant a new trial, or alternatively, to declare a mistrial based upon juror misconduct. Attached to the motion were transcripts of interviews a private investigator had conducted with ten of the twelve jurors on behalf of Ford. There was also an affidavit from the private investigator. According to Ford's motion to set aside the settlement agreement, the relevant facts were "without dispute." Ford also argued that, as a matter of law, the attached evidence established juror misconduct and the affirmative defense of mutual mistake.

The Plaintiffs filed a response to the motion, pointing out, among other things, counsel's prior assurances that Ford had "no problem" with the settlement agreement.

In a written order, the trial court struck the evidence attached to Ford's motion. The court found that Ford had not made a showing of juror misconduct or outside influence. It also found that there was no evidence of mutual mistake or other grounds to vacate or rescind the settlement. The court denied the motion and noted that its "previous orders to enforce the settlement and to require defendant to deposit settlement funds into a qualified settlement fund and to establish qualified settlement fund remain in effect."

The Plaintiffs then filed a motion for summary judgment for breach of contract. Ford filed a response to the motion, arguing, among other things, that the Plaintiffs could not prevail on a motion for summary judgment without amending their pleadings to assert a cause of action for breach of contract. Ford also maintained that it would be an abuse of discretion to allow the Plaintiffs to amend their pleadings post-trial. According to Ford, "Plaintiffs' only recourse is to bring a separate lawsuit for breach of contract."

Without holding a hearing, the trial court issued a written order granting the Plaintiffs' motion for summary judgment. A final judgment was then entered against Ford for the settlement amount, attorney's fees, and court costs.

Ford now raises three issues on appeal: (1) the trial court erred by not treating the Plaintiffs' request for enforcement of the settlement agreement as a claim for breach of contract, subject to the same procedures and requirements normally applied to such a claim; (2) the trial court erred by denying Ford the opportunity to conduct discovery before it summarily enforced the settlement agreement; and (3) the trial court erred by sustaining the Plaintiffs' objections to the four juror affidavits attached to its motion to delay.[2] We overrule these issues and affirm the judgment of the trial court.

## I. Action on Settlement Agreement

In its first issue, Ford argues that the trial court erred by failing to treat judicial enforcement of the settlement agreement as an ordinary claim for breach of contract:

> The simple threshold point is that the plaintiffs' complaint about Ford's alleged breach of this settlement agreement is no different from any other claim for breach of contract. There are established procedures under which such claims are resolved. Those procedures include pleading the claim, conducting discovery to gather evidence, and then submitting disputed questions of fact to the jury or court at trial. None of those procedures were observed here; all of them were short-circuited. That is not right.

BRIEF OF APPELLANT, p. 24. Ford's appellate brief spells out specific disadvantages imposed on Ford by what it argues was the trial court's erroneous treatment of the case:

> The plaintiffs never filed an amended petition to assert a cause of action for breach of contract; Ford was denied discovery to support its defenses, and there was no trial at which contested

2. Whether this Court finds the circumstances leading to the settlement in this case "troubling" or "discomforting" (REPLY BRIEF OF APPELLANT, p. 3) is of no consequence as we are confined to addressing only the issues fairly raised in Ford's brief. *See* TEX R.APP. P. 38.1(e), 47.1.

fact issues could be submitted to a judge or jury.... That was error.

BRIEF OF APPELLANT, p. 27.

## A. Agreed Judgment vs. Judgment Enforcing Binding Contract

As a preliminary matter, we disagree with Ford's contention that this case was treated as something other than an action for breach of contract. To be sure, the case began as a products liability suit; however, it became a matter of contract law when the parties reached a settlement in open court. *See* TEX.R. CIV. P. 11 (governing agreements between attorneys or parties touching any suit pending); *Padilla v. LaFrance*, 907 S.W.2d 454, 461–62 (Tex.1995) (equating action to enforce settlement to breach of contract action). When the jury was dismissed and Ford refused to pay the settlement, the case became a contractual dispute. *See* TEX.R. CIV. P. 11; *LaFrance*, 907 S.W.2d at 461–62.

We understand Ford's argument to be that the trial court abused its discretion by rendering an agreed judgment. Ford raised this contention before the trial court, insisting that no judgment could be rendered for the settlement amount because Ford had withdrawn its consent to settle.

■■■ We agree that a judgment based upon an agreement of the attorneys cannot be rendered by a court if the consent of one of the parties thereto is wanting. *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex.1983); *Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288, 291 (1951). The power to render an agreed judgment depends upon the "substance of the consent" at the time judgment is rendered. *Quintero*, 654 S.W.2d at 444; *Burnaman*, 240 S.W.2d at 291. Therefore, a party has the right to revoke his or her consent at any time before the rendition of judgment. *See Samples Exterminators v. Samples*, 640 S.W.2d 873, 874 (Tex.1982). If a trial court has knowledge that one of the parties to a suit does not consent to a judgment, the trial court should refuse to sanction the agreement by making it the judgment of the court. *Quintero*, 654 S.W.2d at 444; *Burnaman*, 240 S.W.2d at 291.

In light of these principles, Ford contends the trial court could not have properly entered a final judgment after Ford withdrew its consent. We disagree. Ford's argument concerns the trial court's entry of an agreed judgment. There is no question that Ford withdrew its consent prior to the entry of judgment in this case. There is thus no question that, under the circumstances, the entry of an agreed judgment would have been an abuse of discretion. *See Quintero*, 654 S.W.2d at 444; *Burnaman*, 240 S.W.2d at 291. The case at bar, however, does not involve the entry of an agreed judgment. The trial court entered a judgment enforcing a settlement agreement, not an agreed judgment.

■■■ The Texas Supreme Court has previously addressed this distinction. *See LaFrance*, 907 S.W.2d at 461–62. In *LaFrance*, it explained that the parties had confused the requirements for an agreed judgment with those for an enforceable settlement agreement. *Id.* Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with rule 11 even though one side no longer consents to the settlement. *Id.* The judgment in the latter case is not an agreed judgment, but rather a judgment enforcing a binding contract. *Id.*

## B. Established Procedures

This brings us to Ford's points about the trial court's failure to follow "established procedures." As Ford points out, even in actions to enforce settlement agreements, parties have the right to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury. *Avary v. Bank of Am., N.A.,* 72 S.W.3d 779, 799 (Tex.App.-Dallas 2002, pet. denied). An action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof. *LaFrance,* 907 S.W.2d at 462; *Bayway Servs. v. Ameri–Build Constr.,* 106 S.W.3d 156, 160 (Tex.App.-Houston [1st Dist.] 2003, no pet.). That is, neither the civil practice and remedies code nor the rules of civil procedure creates a separate standard for enforcing disputed settlement agreements that bypasses the common law pleading and proof requirements. *See Mantas v. Fifth Court of Appeals,* 925 S.W.2d 656, 658 n. 2 (Tex.1996) (orig. proceeding); *Cadle Co. v. Castle,* 913 S.W.2d 627, 632 (Tex.App.-Dallas 1995, writ denied).

### 1. Confrontation by Appropriate Pleadings

One of the main complaints raised on appeal by Ford is that the Plaintiffs never filed an amended petition asserting a cause of action for breach of contract. Ford maintains that in the absence of such a pleading, the trial court had no basis to render a judgment for breach of contract. In response, the Plaintiffs contend that their motion to enforce settlement was a sufficient pleading.

We agree with the Plaintiffs. In other factually-similar cases, courts have held that a motion to enforce settlement is a sufficient pleading. *Neasbitt v. Warren,* 105 S.W.3d 113, 117–18 (Tex.App.-Fort Worth 2003, no pet.); *Browning v. Holloway,* 620 S.W.2d 611, 615 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.). These holdings reflect the essential function of legal pleadings, which is to give adversary parties notice of each other's claims and defenses, as well as notice of the relief sought. *See Perez v. Briercroft Serv. Corp.,* 809 S.W.2d 216, 218 (Tex.1991).

We have no doubt that Ford had adequate notice of the Plaintiffs' claims. Ford's motion to delay settlement was filed well before the Plaintiffs commenced an action for judicial enforcement. Although the Plaintiffs asserted no claims against Ford at the time, Ford's motion to delay nevertheless sought to conduct discovery, apparently in anticipation of an action for breach of contract. At that point in time, if not sooner, Ford's conduct and the relief it sought demonstrate that Ford anticipated a lawsuit and that Ford was well aware of the claims and relief the Plaintiffs would seek if the parties did not resolve their dispute.

Ford's actual notice of the Plaintiffs' claim is also demonstrated by its motion to set aside the settlement agreement, which was filed shortly after the Plaintiffs' motion to enforce to settlement. Not only did Ford's motion to set aside acknowledge the claim for relief stated in the Plaintiffs' motion to enforce, it also set forth juror misconduct and mutual mistake as defenses to breach of contract. Ford even provided evidence to support its position that Ford "was entitled to judgment as a matter of law."

Given these facts, we conclude that the Plaintiffs' motion to enforce settlement was a sufficient pleading and that the trial court did not err by allowing the Plaintiffs to pursue judicial enforcement of the settlement agreement. *See Neasbitt,* 105 S.W.3d at 117–18; *Browning,* 620 S.W.2d at 615.

In reaching this holding, we find it noteworthy that Ford made the following argument in its response to the Plaintiffs' motion for summary judgment:

> [A] post-trial amendment that asserts a new cause of action is prejudicial on its face and should not be permitted. Plaintiffs have never before asserted any claim for breach of contract, much less a claim for breach of this alleged contract, so their claim will be new and consequently prejudicial ... Plaintiffs should not be permitted to bring this claim in the same suit. Due to the prejudice that would otherwise result, Plaintiffs only recourse is to bring a separate lawsuit for breach of contract and to then follow the traditional procedures to assert such a claim.

(internal citations omitted).

Ford's argument in this regard is plainly contrary to what the Texas Supreme Court has instructed:

> Where the settlement dispute arises while the trial court has jurisdiction over the underlying action, a claim to enforce the settlement agreement should, if possible, be asserted in that court under the original cause number. However, where the dispute arises while the underlying action is on appeal, as in this case, the party seeking enforcement must file a separate breach of contract action.

*Mantas,* 925 S.W.2d at 658.

In this case, there is no question that the trial court still had jurisdiction over the underlying action. Therefore, the claim to enforce the settlement agreement was properly asserted in the same court under the original cause number. *See id.*

Finally, in a twist that we can only call strange, Ford's reply brief in this appeal argues that the foregoing issue is not actually disputed:

> [P]laintiffs devote portions of their brief to refuting complaints that Ford does not even make in this Court, but that plaintiffs apparently wish they did. The "straw men" that plaintiffs thereby attack include, for example, the contention that plaintiffs had to file a separate lawsuit to enforce the settlement agreement, and that they did not file a formal amended petition to assert that claim. Ford did make both of those arguments below. But it does not make either complaint here, since it would rather focus on the core concerning the denial of its requested discovery.

REPLY BRIEF OF APPELLANT, p. 10.

To put it mildly, we are surprised by Ford's concession that its first issue raises "straw men" or dummy arguments. Although this about-face seems unusual, it reinforces our conclusion that Ford's argument is without merit.

## 2. Opportunity to Assert Defenses

Another part of Ford's complaint about the trial court's failure to follow "established procedures" is that Ford was denied "the opportunity to plead and prove its affirmative defense of mutual mistake." We find this complaint unfounded.

At the outset, we question what Ford means by "plead and prove." After all, Ford did file a motion to set aside the settlement, with supporting evidence, and argued, "All of the elements to invoke the doctrine of mutual mistake are uncontested." Ford maintained that the facts were "without dispute" and that it had established mutual mistake "as a matter of law." The trial court disagreed and issued a written order stating that Ford had produced no evidence of mutual mistake, a ruling Ford does not challenge.

We are at a loss to understand how Ford can complain about not having an

opportunity to "plead and prove" mutual mistake when it not only filed a motion to set aside the settlement, complete with supporting evidence, but also got a direct ruling by the trial court, which it does not challenge on appeal.

### 3. Opportunity for Discovery

Ford also argues that the trial court failed to afford it a reasonable opportunity to conduct discovery. We disagree with Ford on this point and note that it is actually the central complaint raised in Ford's second issue. The merits of Ford's contention and our reasons for disagreement are fully discussed below in our analysis of Ford's second issue.

### 4. Submission of Disputed Facts to Jury or Court

Finally, Ford contends that it was denied its basic right to have "disputed questions of fact [submitted] to the jury or court at trial." Contentions such as this—that genuine issues of material fact made summary judgment improper—are frequently raised on appeal and the burdens they entail are quite familiar. In general, complaining parties who prevail on such challenges have (1) adequately briefed their grounds for reversal by providing a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record, *see* TEX. R.APP. P. 38.1(h), and (2) demonstrated that the same grounds for reversal were expressly presented to the trial court by written motion, answer, or other response, *see* TEX.R. CIV. P. 166a(c).

In this case, Ford has not provided a clear and concise argument for its contention that facts issues made summary judgment improper. Ford's brief does not identify the fact issues that should have been submitted to the trier of fact.

In the section of Ford's brief that contains its "Summary of the Argument," Ford clarifies that the central issue on appeal is Ford's right to conduct discovery, not whether it produced sufficient evidence to defeat the Plaintiffs' motion for summary judgment:

> The question at the heart of this appeal is *not* whether Ford was able to present sufficient evidence of juror misconduct, or outside influence, or fraudulent inducement, or some other ground for defeating the Plaintiffs' claim for breach of this settlement agreement. Rather, the question is whether Ford should have been allowed to conduct discovery to find out whether there *was* sufficient evidence of juror misconduct, or outside influence, or fraudulent inducement, that would have made that agreement unenforceable.

BRIEF OF APPELLANT, p. 23 (emphasis in original).

In light of this statement and given that Ford has not adequately briefed any challenge to the summary judgment based on the existence of fact issues, we conclude that this contention is also without merit.

Having reviewed all of Ford's contentions regarding the trial court's failure to follow established procedures, and having found them to each be without merit, we overrule Ford's issue in its entirety.

### II. Opportunity for Discovery

In its second issue, Ford argues that the trial court erred by denying it the opportunity to conduct discovery before submission of the Plaintiffs' motion for summary judgment.

 If a party has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for

continuance. *See* TEX.R. CIV. P. 166a(g), 251, 252; *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996); *Gabaldon v. Gen. Motors Corp.*, 876 S.W.2d 367, 369 (Tex.App.-El Paso 1993, no writ); *Watson v. Godwin*, 425 S.W.2d 424, 430 (Tex.Civ.App.-Amarillo 1968, writ ref'd n.r.e.). Ford did neither.

In counsel's words:

> Ford did not request a *continuance*, and it does not complain on appeal that a continuance was not granted. Indeed, a continuance of the hearing on plaintiffs' motion for summary judgment would not have done Ford precisely no good [sic] whatsoever, since the trial court had already refused to allow Ford to conduct the discovery it wished to undertake. It is that denial of discovery about which Ford complains, not the trial court's failure to postpone the hearing.

REPLY BRIEF OF APPELLANT, p. 5 (emphasis in original).

■ A party must file either an affidavit explaining the need for further discovery or a verified motion for continuance in order to complain that it had an inadequate opportunity for discovery. *See Stangel v. Perkins*, 87 S.W.3d 706, 709 (Tex.App.-Dallas 2002, no pet.). Otherwise, the error is waived. *Green v. City of Friendswood*, 22 S.W.3d 588, 594 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). To the extent Ford argues it had an inadequate opportunity for discovery

before the submission of the Plaintiffs' motion for summary judgment, its second issue has been waived.[3]

## III. Order on Motion to Delay

In the interest of addressing every issue fairly raised and necessary for final disposition of the appeal, *see* TEX.R.APP. P. 47.1, we acknowledge that Ford's second issue also appears to include a sub-issue attacking the trial court's denial of Ford's motion to delay, which had requested court-sanctioned discovery into the circumstances of the jury note that had prompted the parties to settle. Ford contends that the ruling was erroneous because there were no legal bars to the requested discovery. In counsel's words:

> The question at the heart of this appeal is not whether Ford was able to present sufficient evidence of juror misconduct, or outside influence, or fraudulent inducement, or some other ground for defeating the Plaintiffs' claim for breach of this settlement agreement. Rather, the question is whether Ford should have been allowed to conduct discovery to find out whether there was sufficient evidence of juror misconduct, or outside influence, or fraudulent inducement, that would have made that agreement unenforceable.

BRIEF OF APPELLANT, p. 23.[4]

We agree that the motion to delay requested specific discovery into the circum-

---

3. In reaching this holding, we emphasize the provisions of rule 166a(g), which are clearly meant to help litigants in Ford's situation (i.e., litigants in need of additional discovery before a summary judgment hearing):

> **When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or

may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

TEX.R. CIV. P. 166a(g).

4. Ford argues that relief under 166a(g) would have been unhelpful because the trial court had already refused its request to conduct "discovery into the odd circumstances by which it was induced to enter this settlement agreement." *See* TEX.R. CIV. P. 166a(g). We

stances of the note. Although the trial court denied the motion to delay, we believe that no error has been preserved for appellate review. Even if error were preserved, we would conclude that such error was not reversible.

## A. Ford Did Not Get an Adverse Ruling on Discovery Request

As a preliminary matter, we are unpersuaded that the trial court's ruling on the motion to delay actually foreclosed the discovery sought by Ford. At the hearing on the motion to delay, the trial court refused to delay the settlement but invited counsel to investigate the matter further and to advise the court of any information that would warrant further action:

> [I]f there's a concern[,] as a lawyer, I would go and find out if there's anything, and I would go and find out what happened, if anything.... But it seems to me that your law firm ... [referring to counsel for Ford] has already kind of started an investigation which is something I would do, guys, if I had this concern.... And I mentioned before, you know, I would be setting dangerous precedent because I've never been aware of [or] know of any case law that deals with this situation.... And I guess what I'm indicating, I've read the affidavits [and] they don't tell me anything [ ] only that there could have been something and I'm not going to be the first judge to do this.... I can't do it without any authority and so you follow the rules you all need to follow, do whatever you need to do.... I really don't want to delay this. I'm not going to delay it. You all go through the process you need to go [through] and [if] you

find that it's necessary to go through the process then we'll deal witness [sic].

This ruling appears to have had the effect of actually granting Ford's request to interview the jurors "and come back to the Court with our findings and make a determination as to where we go from there." After all, the trial court had encouraged Ford to conduct its own investigation and to inform the trial court if it became necessary to "go through the process," by which the trial court apparently meant a trial or some type of full-blown evidentiary hearing.

Although Ford's brief does not admit as much, this is exactly what Ford did. It hired a private investigator to interview the jurors. Ten of the interviews were recorded and transcribed, and they were ultimately submitted to the trial court as "uncontested" evidence of juror misconduct and mutual mistake. Ford was even able to contact the jury foreperson who was apparently "uncooperative."

In deciding "whether Ford should have been allowed to conduct discovery," as Ford frames its second issue, we cannot ignore the evidence Ford actually collected and submitted to the trial court for review. *See K.C. Roofing Co. v. Abundis*, 940 S.W.2d 375, 379–80 (Tex.App.-San Antonio 1997, writ denied). Nor can we dismiss the significant overlap between the evidence Ford submitted to the trial court and the evidence Ford sought to collect through court-sanctioned discovery. These considerations indicate that the trial court's denial of Ford's motion to delay did not compromise Ford's ability to collect the evidence it had sought to discover.

In the end, the only notable evidence Ford was unable to collect was a statement

---

disagree. Under rule 166a(g), the trial court could have revisited its prior ruling and ordered a continuance to permit "affidavits to be obtained or depositions to be taken or discovery to be had." *Id.* This is the very relief Ford claims it was erroneously denied.

from the jury foreperson. Ford concedes that the trial court did not prevent Ford from contacting the jury foreperson, from taking her statement, or from collecting an affidavit from her. She was simply "uncooperative," to use Ford's description of what happened. In the words of Ford's attorney

> It is, to put it gently, rather naive to suggest that ... [the jury foreperson] might gleefully provide an affidavit announcing that this was her scheme. It is even less plausible to suggest that she would openly admit that she employed this stratagem at the behest of someone outside the jury, perhaps even someone connected with the Plaintiffs' camp.

REPLY BRIEF OF APPELLANT, p. 6–7.

For these reasons, we believe that the trial court's ruling did not actually foreclose or deny the requested discovery. The ruling allowed Ford to collect virtually all the evidence it sought to discover and left open the possibility of a full-blown evidentiary hearing to collect further evidence if necessary. We are accordingly inclined to overrule Ford's second issue on the grounds that Ford failed to get an adverse ruling from the trial court. *See* TEX.R.APP. P. 33.1(a).

### B. Waiver of Any Adverse Discovery Ruling

We would reach a similar disposition even if the trial court had actually denied the requested discovery, as Ford argues. We cannot ignore the mixed messages Ford gave to the trial court about its need for further discovery. Ford initially made a clear request for discovery in its motion to delay. Ford wanted to collect evidence from the jurors. After the motion to delay was denied, however, Ford made very inconsistent statements to the trial court, statements which could only mean that further discovery was unnecessary.

For instance, after the motion to delay was denied, counsel for Ford inexplicably assured the trial court that, despite prior objections, Ford would pay the settlement amount rather than contest whether the settlement was enforceable. These actions were obviously inconsistent with Ford's earlier request for discovery. Nor can we say that a request for further discovery was inherent in counsel's statements or was otherwise apparent from the context in which the statement were made. *See* TEX.R.APP. P. 33.1(a). Both the substance and the context of counsel's assurances to the trial court affirmatively indicate that Ford had relinquished its request for discovery.

We have great difficulty reconciling these statements, especially because they were made at the hearing on the Plaintiffs' motion to enforce settlement. Likewise, we cannot discount their effect because they affirmatively indicate that additional discovery would no longer be necessary because Ford was no longer attempting to avoid the agreement.

Shortly after the statements were made, Ford changed its position yet again. It filed a motion to set aside the settlement agreement. Even in this motion, however, no further discovery was requested. Ford argued, "The facts relevant to this motion are supported by the attached proof, and are without dispute." Instead of arguing that additional discovery was necessary, Ford argued, "All of the elements to invoke the doctrine of mutual mistake are uncontested." Again, the substance and the context of Ford's statements suggest that it no longer sought further discovery.

Ford attached supporting evidence to its motion to set aside the settlement, a fact which also indicates that Ford no longer required further discovery. Ford attached recorded statements and transcripts of re-

corded interviews from ten of the twelve jurors, the same evidence that Ford had requested time to collect in its motion to delay. No statements from the jury foreperson were attached to the motion, but there was also no indication in the motion that Ford needed to obtain a statement from the foreperson or that it even wished to do so.

It was not until two and a half months after the motion to delay was denied, when the Plaintiffs filed a motion for summary judgment, that Ford reurged a general complaint about not having "an opportunity to conduct discovery." At this point, Ford sought discovery "to determine the motivation of the presiding juror's actions and any outside influences that possibly swayed her" on the grounds that it "may provide further proof that she committed juror misconduct."

Although Ford's response clearly requested further discovery, we can hardly say that Ford made this request consistently or continuously from the point at which its motion to delay settlement was denied. After the motion to delay was denied, Ford promised the trial court that it would pay the settlement amount. Then, Ford produced virtually the same evidence that was the subject of the prior discovery request and argued that all material facts were without dispute. Ford never filed a new motion reasserting its request for additional discovery.

We believe that these actions had the effect of withdrawing Ford's prior request for discovery, as we cannot conclude that a request for discovery was fairly before the trial court or apparent from the context. *See* TEX.R.APP. P. 33.1(a)(1)(A); *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 130 (Tex.2004) (orig. proceeding); *Motor Vehicle Bd. of the Tex. DOT v. El Paso Indep. Auto. Dealers Ass., Inc.*, 1 S.W.3d 108, 111 (Tex.1999) ("A party's ex-press renunciation of a known right can establish waiver. Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver.").

This leaves the request for further discovery that Ford made in its response to the Plaintiffs' motion for summary judgment. As noted above, a party requesting additional discovery to oppose a motion for summary judgment must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Stangel*, 87 S.W.3d at 709; *Green*, 22 S.W.3d at 594. Ford did neither of these things. Accordingly, the issue has been waived.

## C. Harmless Error

Even if error had been preserved for appellate review and not waived, we would still have no basis for reversing the judgment. Although the trial court denied the motion to delay, Ford was ultimately able to conduct its own investigation into the circumstances of the jury's note. Ford contacted at least eleven of the twelve jurors, including the foreperson. Ten of the eleven jurors agreed to be interviewed by a private investigator working for Ford. Evidence generated by these interviews was submitted to the trial court for review. Ford even filed a motion to set aside the settlement agreement, in which it argued that the evidence established juror misconduct and mutual mistake as a matter of law.

Given the evidence and Ford's arguments, we are at a loss to understand how the trial court's error "probably led to the rendition of an improper judgment" or "probably prevented appellant from properly presenting the case to the court of appeals." *See* TEX.R.APP. P. 44.1(a). Ford has not identified what specific evidence, or even what general type of evidence, it

would have added to its defense if the trial court had granted its motion to delay.

The only conceivable addition would be a statement from the jury foreperson; however, it is difficult to understand how the absence of a statement from the jury foreperson could have "probably led to the rendition of an improper judgment" when Ford concedes that the foreperson would not have added anything to its case. *See* REPLY BRIEF OF APPELLANT, p. 6–7.

For these reasons, we conclude that the trial court's error, if any, was harmless. *See* TEX.R.APP. P. 44.1(a). Ford's second issue is overruled.

### IV. Objections to Affidavits

 In its third issue, Ford argues that the trial court erred by sustaining the Plaintiffs' objections to the four juror affidavits referenced in Ford's response to the Plaintiffs' motion for summary judgment. The four juror affidavits were originally filed in support of Ford's motion to delay settlement. When the Plaintiffs moved for summary judgment, Ford filed a response arguing that summary judgment would be improper because of the unresolved fact issues raised by the affidavits:

> The juror affidavits ... create ... a fact issue as to whether Ford was improperly misled, and whether both Ford and the Plaintiffs were mistaken as to the course of the jury deliberations, believing that the jurors had reached the damages questions when in fact they were strongly leaning against finding any liability at all on the part of Ford. Such mistaken beliefs substantially affected the settlement negotiations, and they entitle Ford to the affirmative defense of mutual mistake....
>
> There are a number of apparent and potential fact issues relevant to the Plaintiffs' new breach of contract claim. These include whether juror misconduct

occurred, whether Ford was improperly mislead, and whether the parties entered into the settlement agreement under mutual mistake. Because of these disputed issues of material fact, summary judgment is not proper.

In their reply brief, the Plaintiffs argued that the four juror affidavits did not raise a fact issue on any potential affirmative defense. They also objected to the four juror affidavits, arguing that they were inadmissible because they contained hearsay, as well as statements which were inadmissible under rule of evidence 606 and rule of civil procedure 327(b). TEX.R. EVID. 606, 802; TEX.R. CIV. P. 327(b). In its order granting summary judgment, the trial court sustained the Plaintiffs' objections and ordered the affidavits stricken from the record. Ford now challenges that ruling.

 Having reviewed the record and the briefs, we find that Ford has not shown itself entitled to appellate relief. Issues involving the admissibility of evidence are committed to the sound discretion of the trial court. *See Exxon Pipeline Co. v. Zwahr,* 88 S.W.3d 623, 629 (Tex. 2002). On appeal from an adverse evidentiary ruling, the complaining party must not only establish a clear abuse of discretion, it also needs to demonstrate how the case turned on the particular evidence admitted or excluded. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex.1995). This assists the reviewing court to determine whether the trial court's error "probably led to the rendition of an improper judgment" or "probably prevented appellant from properly presenting the case to the court of appeals." *See* TEX.R.APP. P. 44.1(a); *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992).

In this case, the trial court's error, if any, would be reversible only if the exclud-

ed evidence actually raised a fact issue on all the elements of an affirmative defense asserted by Ford. *See American Petrofina v. Allen,* 887 S.W.2d 829, 830 (Tex. 1994). Ford's appellate briefs, however, lack any discussion of the elements of mutual mistake or fraudulent inducement or citation to any relevant authority. *See* TEX.R.APP. P. 38.(h). Ford has not argued on appeal that the excluded affidavits raised a fact issue on the elements of either of these affirmative defenses. *See id.* In fact, there is no argument at all in Ford's briefs regarding how the trial court's ruling affected the final judgment. *See id.* Ford has altogether neglected this part of its burden.

Because Ford's briefing is inadequate to demonstrate how the trial court's error, if any, probably led to the rendition of an improper judgment, we overrule Ford's third issue without deciding whether the trial court's ruling was actually erroneous. *See* TEX.R.APP. P. 38.1(h), 44.1(a), 47.1; *Alvarado,* 897 S.W.2d at 753–54; *Downen v. Tex. Gulf Shrimp Co.,* 846 S.W.2d 506, 512 (Tex.App.-Corpus Christi 1993, writ denied).

The judgment is AFFIRMED.

Dissenting opinion by Justice ERRLINDA CASTILLO.

CASTILLO, Justice, dissenting.

This is an appeal from a summary judgment with respect to breach of a settlement agreement. By its first issue, appellant Ford asserts that the trial court improperly granted summary judgment on an unpleaded contract claim. By its second issue, Ford asserts that the trial court abused its discretion by disallowing discovery on the question of potential misconduct by the presiding juror. By its third issue, Ford maintains that the trial court erred in striking the jurors' affida-

vits. Because I would sustain the first issue presented, I respectfully dissent.

## *I. Background*

Trial lasted approximately three weeks. The jury began deliberations on a Friday afternoon and recessed for the weekend. The jury continued deliberations the following Monday, recessed on Tuesday, and resumed deliberations on Wednesday. Meanwhile, on Tuesday evening, settlement discussions occurred between the litigants. On Tuesday, deliberations were recessed because a member of the presiding juror's family was ill. When deliberations ensued on Wednesday morning during the liability phase of the charge, the presiding juror caused the following question to be delivered to the trial court: "What is the maximum amount that can be awarded?" The case settled promptly. Before effecting settlement, Ford requested time to investigate the events leading up to the presiding juror's question. The trial court denied the request. Ford also requested the trial court to investigate. The trial court did not do so. Appellees later filed a motion for summary judgment asserting as grounds breach of the settlement agreement. Having entered prior orders to compel settlement, the trial court granted appellees' motion for summary judgment. This appeal ensued.

## *II. Pleadings*

By its first issue, Ford maintains that appellants did not plead contract or breach of contract and summary judgment is thus improper. The record demonstrates that appellees' live pleading does not contain a cause of action for breach of contract.

Respectfully, I would hold that the trial court had no authority to enter a summary judgment since no live pleading existed urging a cause of action from which a judgment could be taken. A pleading, by

definition, determines the issues to be tried. *Erisman v. Thompson,* 140 Tex. 361, 167 S.W.2d 731, 733 (1943). There must be some pleading pending against which a summary judgment can be granted. *Granado v. Madsen,* 729 S.W.2d 866, 870 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd. n.r.e.) (finding that summary judgment order in case where there were no live pleadings and, thus no cause of action against which summary judgment could be granted, was a nullity and of no effect); *Seber v. Glass,* 258 S.W.2d 122, 124 (Tex.Civ.App.-Fort Worth 1953, no writ) (finding that where appellee filed no pleadings seeking affirmative relief, trial court was wholly without jurisdiction as to parties or subject matter and purported order granting affirmative relief was void). Where there is no pleading, there can be no judgment. *Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex.1983).

In this case there is no pleading to support the summary judgment granted. Accordingly, I would sustain Ford's first issue presented. Because the issue is dispositive, I do not address the remaining issues. *See* Tex.R.App. P. 47.1.

### III. Conclusion

Because I would hold that summary judgment on an unpleaded cause of action is improper, I respectfully dissent.