NUMBER 13-04-436-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


MARELYN MEDINA, M.D., Appellant,


v.
 


MICHAEL B. HART, Appellee.

 




On appeal from the 275th District Court of Hidalgo County, Texas.


 




O P I N I O N



Before Justices Rodriguez, Garza, and Benavides 


Opinion by Justice Benavides



 This appeal arises from a medical malpractice lawsuit that was tried to a jury verdict. 
Appellee, Michael Hart, brought suit against appellant, Marelyn Medina, M.D., for injuries
he sustained during surgery to remove a kidney stone. The jury found Dr. Medina negligent
and awarded damages. On appeal, Dr. Medina argues that the trial court erred in admitting
expert testimony from a witness who was not qualified under former article 4590i of the
Medical Liability and Insurance Improvement Act of Texas. (1) Dr. Medina claims that without
this testimony, there was no evidence that she breached the standard of care and that this
breach caused appellee's injury. We affirm.

I. Background


 Hart is a missionary in Veracruz, Mexico. In November 2001, he returned to the
United States to seek treatment for kidney stones. His wife, Teresa Hart, contacted Dr.
Medina, who agreed to see him.

 Dr. Medina examined Hart and determined that a kidney stone was blocking the
tubes to his left kidney. At first, Dr. Medina recommended a non-invasive surgery (2) to break
the kidney stone apart, but after complications arose, she determined that invasive surgery
was required. (3)

 Hart was admitted to Rio Grande Regional Hospital for surgery on November 16,
2001. He was placed under general anesthesia. Dr. Medina testified that prior to the
surgery, Hart was positioned on the operating table with his right side down. His left side
was exposed upward so that Dr. Medina could access the left kidney. 

 Dr. Medina testified that she supervised the placement of cushioning devices used
in positioning Hart for surgery. Hart's right arm was raised above his head, and a
cushioning device was placed in his right axilla, or his right underarm, to prevent nerve
damage to his shoulder and arm. Dr. Medina testified that she personally placed an IV
bag-a bag primarily used to infuse liquids into a person's body through the veins-under
Hart's right arm as a cushioning device. Although Dr. Medina testified that she often used
IV bags for this purpose, the parties disputed whether this was a proper use. Dr. Medina
performed the surgery but was unable to remove the kidney stone.

 After surgery, when Hart awoke, he began to complain of pain underneath his right
arm. Upon inspection, nurses discovered blisters on Hart's right axilla, where the IV bag
had been placed for cushioning. After several visits to Dr. Medina over the following weeks,
Dr. Medina referred Hart to Rafael Avila, M.D. Dr. Avila diagnosed Hart's condition as
second and third degree burns under his right arm. Dr. Avila recommended and performed
a skin graft after removing necrotic, or dead, tissue from the area. Hart subsequently lost
feeling in that area, is unable to sweat, and suffered other complications from the burns.

 Hart filed a medical negligence suit on August 1, 2003 under former article 4590i. 
He alleged that Dr. Medina negligently used the IV bag as a positioning device, resulting in
second and third degree burns to Hart. Hart designated Phillip Diggdon, M.D. as his expert
witness to testify about the standard of care, breach, and causation. 

 At his deposition, Dr. Diggdon opined that Dr. Medina bore ultimate responsibility for
positioning Hart during surgery. He testified that the standard of care was to safely place
a positioning device under the right axilla during the surgery. Dr. Diggdon testified that Dr.
Medina breached the standard of care for positioning Hart during surgery by using a "red
hot" IV bag to cushion Hart's right axilla, which caused Hart's second and third degree
burns.

 After this deposition, Dr. Medina filed a motion to strike Dr. Diggdon as Hart's expert. 
Dr. Medina claimed that Dr. Diggdon was not qualified to testify under former article 4590i,
section 14.01. Specifically, Dr. Medina argued that Dr. Diggdon was not practicing medicine
at the time of the injury or at the time of his testimony because Dr. Diggdon retired from
active practice approximately one month before Hart's operation. Additionally, Dr. Medina
argued that Dr. Diggdon was unqualified because he was not a burn expert. Dr. Medina did
not ask the trial court to dismiss the case-rather, she only requested that the trial court
strike Dr. Diggdon as Hart's expert. (4)

 In response, Hart filed a supplemental affidavit from Dr. Diggdon. It recited Dr.
Diggdon's qualifications and stated that Dr. Diggdon had been serving as a consulting
physician since closing his practice:

 I am a board certified urological surgeon with 38 years experience in active
patient practice. My medical training and background encompasses all
aspects of my patient's care beginning with safe entry into the operating suite,
patient positioning to safeguard from passive injury and meticulous surgical
preparation including the performance of procedures such as the
pylolithotomy made the basis of this matter. Approximately one month prior
to the date of this incident, I had closed my practice. However, at that time
and continuing to the present, upon the request of my peers, I have continued
to serve as a consulting physician to those physicians who provide direct
patient care in my field of expertise. Additionally, I have continued to update
my medical education through attending conferences detailing new
procedures and techniques. 

 The trial court held a hearing on the motion to strike. Dr. Medina objected to Dr.
Diggdon's affidavit on the grounds that it was untimely. The trial court did not rule on this
objection. Although Dr. Medina represents on appeal that she objected to the affidavit as
conclusory because it did not detail with whom Dr. Diggdon had consulted, the record does
not reflect that such an objection was made. The trial court denied Dr. Medina's motion to
strike Dr. Diggdon as Hart's expert. The case then proceeded to trial.

 At trial, Dr. Diggdon testified by video as Hart's expert, and Dr. Medina re-urged her
objection to his qualifications. The trial court again overruled Dr. Medina's objection and
allowed Dr. Diggdon to testify by video deposition. 

 Dr. Medina was questioned extensively by both sides at trial. She stated that Rio
Grande Regional Hospital policy required her, as the surgeon, to properly assess her patient
for positioning needs and have positioning devices readily available. She also admitted that
it was her responsibility to make sure that Hart was not going to be injured as a result of
being on the operating table and unconscious for the duration of the surgery:

 Q: I mean, you've got-you as a doctor having knowledge got [sic] to take
the time and the effort to make sure that he is not going to be injured
as a result of just being on the table and unconscious for whatever
length of time that the surgery takes, true?


 A: True. 


 Dr. Medina's attorney elicited an admission from Dr. Medina that placing a hot IV bag
under someone's body would be a breach of the standard of care:

 Q: All right. So there's no question about this. Do we need a paid expert
from Oklahoma to come in and tell us that you shouldn't put a hot bag,
a red hot bag underneath a patient's armpit? I mean, would you agree
that that shouldn't be done?

 

 A: That shouldn't be done, sir.

 She testified that Dr. Avila diagnosed Hart's injury as a burn, and although she
initially disagreed with this diagnosis, she stated at trial that "[a]t this time I would say that
[Hart] suffered a burn." She testified that Hart's burn was in the same location as the IV bag
and approximately the same size. Although she disputed whether the bag was hot when
she placed it under Hart's arm, Dr. Medina testified that regardless of the heat source, the
IV bag that she placed under Hart's arm was warm and caused Hart's burn:

 Q: Dr. Medina, regardless of the heat source, it was the IV bag that
became warm and burned Mr. Hart, regardless of the heat source,
correct?

 

 A: That is the what the working diagnosis is.

 

 Q: That is-that is the only thing that injured Mr. Hart was a hot IV bag
from some heat source, correct?

 

 A: I would assume, yes.

 

 Q: Okay. That would be fact, wouldn't it? Was there anything else under
his armpit than this IV bag?

 

 A: The only thing there that I know of was the bag.

 

 Q: So therefore regardless of the heat source it was an IV bag that
caused injury to Mr. Hart during the operation? 

 

 A: I would assume that is.

 

 Q: And it was you who put the IV bag there?

 

 A: That is correct, sir.

 The parties' main dispute at trial was over how the IV bag became heated. Dr.
Medina denied that the bag was heated when it was handed to her before she placed it
underneath Hart's arm. She could not remember whether it was wrapped in a towel when
it was handed to her, but if so, she testified that she would have removed the towel prior to
placing it under Hart. She testified that she touched the bag, and it was not hot. Dr. Medina
theorized that it was possible that the bag was heated after being placed under Hart's arm.

 Cesar Guerra, the circulating nurse on duty at the time of Hart's surgery, testified that
the IV bag was wrapped in a surgical towel prior to being placed under Hart's arm. He
testified that there was an IV bag-warmer outside the operating room that was often used
to heat IV fluids in the bags prior to being administered to a patient. Although he testified
that the IV bag was not taken off a warmer before Dr. Medina positioned it, he had no
personal knowledge of whether the IV bag was previously warmed. 

 Teresa Hart testified that Guerra told her that the IV bag had been heated and then
wrapped in a towel prior to being placed underneath her husband's arm. She also testified
that after the surgery, she and her husband visited Dr. Medina's office. She recounted her
conversation with Guerra to Dr. Medina and questioned Dr. Medina about the use of a
heated IV bag. At that point, Dr. Medina became very upset, denied using a heated IV bag,
and left the room. Teresa testified that after Dr. Medina left the room, Dr. Medina's
employee, Lily, stated, "I wish some people would just simply tell the truth." Hart
corroborated this testimony, but he added that Lily told him that the IV bag was "too hot." 
 In closing arguments, Dr. Medina's attorney made the following arguments about the
issues in the case, including the standard of care and breach:

 This case is about one question. The question is: Was the IV bag red hot
when Dr. Avila-Dr. Medina put it under Mr. Hart? That is the only issue in this
case. Was it red hot? . . . First of all, if it was red hot, there was a breach in
the standard of care. Dr. Avila-I mean, Dr. Medina will admit to that. If she
actually put a red hot bag underneath Mr. Hart's arm, that was a breach. 
Okay. You don't need an expert from Oklahoma to tell you all of that.

Dr. Medina's attorney then summarized and attempted to discredit the testimony that the
bag was hot, referencing the Harts' testimony regarding statements made by Dr. Medina's
nurse, Lily.

 The jury found that Dr. Medina was negligent and that her negligence proximately
caused Hart's injury. The trial court rendered judgment on the verdict, and after applying
settlement credits, awarded Hart $193,000.00 against Dr. Medina, plus prejudgment and
post-judgment interest and costs. This appeal ensued.

II. Standard of Review 
 

 Dr. Medina argues on appeal that the trial court erroneously admitted Dr. Diggdon's
testimony because Dr. Diggdon was not qualified. A trial court's ruling on an expert's
qualifications is reviewed under an abuse of discretion standard. Broders v. Heise, 924
S.W.2d 148, 151 (Tex. 1996). "'The test for abuse of discretion is whether the trial court
acted without reference to any guiding rules or principles.'" Id. (quoting E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995)). 

 To obtain reversal based on the trial court's error in the admission of evidence,
however, Dr. Medina must further show that the error probably caused the rendition of an
improper judgment. Tex. R. App. P. 44.1(a); Nissan Motor Co. v. Armstrong, 145 S.W.3d
131, 144 (Tex. 2004). To make this determination, we must review the entire record. 
Nissan, 145 S.W.3d at 144. The complaining party must generally demonstrate that the
"judgment turns on the particular evidence admitted." Id. Although it sounds simplistic, and
often is, application of this standard is also sometimes difficult and dependent on the facts
of that particular case:

 Clearly, erroneous admission is harmless if it is merely cumulative. But
beyond that, whether erroneous admission is harmful is more a matter of
judgment than precise measurement. In making that judgment, we have
sometimes looked to the efforts made by counsel to emphasize the erroneous
evidence and whether there was contrary evidence that the improperly
admitted evidence was calculated to overcome.

Id. (citations omitted). 

III. Application
 

 Initially, we note that Dr. Medina's briefs merely state that absent Dr. Diggdon's
testimony, there is no evidence that Dr. Medina's negligence caused Hart's injuries. (5)
 
Otherwise, Dr. Medina's briefs focus entirely on the admissibility of Dr. Diggdon's testimony. 
Dr. Medina did not attempt to point out and distinguish the portions of the record, referenced
above, that might be construed as otherwise supporting the judgment. We could reject Dr.
Medina's arguments solely based on her failure to brief and demonstrate reversible error. 
Tex. R. App. P. 38.1(h); Indian Beach Prop. Owners' Ass'n. v. Linden, No. 01-05-01116-CV,
2007 Tex. App. LEXIS 2286, at *17 (Tex. App.-Houston [1st Dist.] Mar. 22, 2007, no pet.);
Ford Motor Co. v. Castillo, 200 S.W.3d 217, 232 (Tex. App.-Corpus Christi 2006, pet.
filed). (6) 

 We have reviewed the record for reversible error, however, because this case is very
unique. While we recognize that a medical malpractice plaintiff must generally present
expert testimony to support their claims of negligence and causation, Garza v. Levin, 769
S.W.2d 644, 646 (Tex. App.-Corpus Christi 1989, writ denied), this is not the typical
medical negligence case. See Murphy v. Russell, 167 S.W.3d 835, 838 (Tex. 2005) ("It
may be that once discovery is complete and the case is tried, there is no need for expert
testimony."). In most medical malpractice cases, the physician's actions or inactions are
well documented, and there is no dispute whether an action or inaction by the physician
actually occurred. Rather, the dispute typically focuses on whether the undisputed action
or inaction constituted negligence that proximately caused an injury. 

 This case is different. The main issue at trial in this case was how and when the IV
bag became heated-not whether placing a hot IV bag under someone's arm would be
negligent and cause a burn. As demonstrated below, Dr. Medina judicially admitted
negligence and causation, and therefore, contrary to Dr. Medina's argument, Dr. Diggdon's
testimony was not the only evidence that the bag was hot when Dr. Medina placed it under
Hart's arm. Dr. Medina cannot establish reversible error in this case because Dr. Diggdon's
testimony was merely cumulative of Dr. Medina's testimony and testimony from the Harts.
See Nissan, 145 S.W.3d at 144. 

 In rare cases, a defendant makes a conclusive, judicial admission on the elements
of negligence and causation. See Grider v. Naaman, 83 S.W.3d 241, 245-46 (Tex.
App.-Corpus Christi 2002), rev'd on other grounds, 126 S.W.3d 73, 74-75 (Tex. 2003)
(holding that evidence conclusively established negligence and causation because surgeon
judicially admitted that his action breached the standard of care and caused plaintiff's
injury). Testimonial admissions will be treated as conclusive, judicial admissions if (1) the
statement was made during a judicial proceeding; (2) it was contrary to an essential fact
embraced in his theory of defense; (3) it was deliberate, clear, and unequivocal, thereby
eliminating the hypothesis of mere mistake or slip of the tongue; (4) giving conclusive effect
to the declaration would be consistent with public policy; and (5) the statement was not
destructive of the opposing party's theory of recovery. Mendoza v. Fid. & Guar. Ins.
Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980). A judicial admission relieves the
opposing party's burden of proof on an issue. Id. In fact, a judicial admission bars the party
admitting the fact from later disputing its existence. Grider, 83 S.W.3d at 246.

 In conducting a legal sufficiency review of a judgment in a medical malpractice case,
the Amarillo Court of Appeals recently found legally sufficient evidence of both negligence
and causation based in part on the judicial admissions of the physician defendant. See
Phillips v. Bramlett, No. 07-05-0456-CV, 2007 Tex. App. LEXIS 2124, at *16-18 (Tex.
App.-Amarillo Mar. 19, 2007, no pet.). There, Phillips performed a hysterectomy on Vicki
Bramlett, and after surgery, ordered immediate blood tests to determine the cause of
unusual urine output. Id. at *2-3. While the tests were performed, Phillips assisted in
another surgery, and then he left the hospital. Id. at *3-4. 

 The nurses on duty sent Phillips a voice-mail message indicating that Bramlett's
blood tests were abnormal, signaling that Bramlett was suffering internal bleeding. Id. 
Phillips did not check his voice-mail before leaving the hospital. Id. By the time Phillips was
finally reached and returned to the hospital, Bramlett had already suffered severe
complications from a massive amount of blood in her abdomen. Id. She eventually died
from complications due to post-operative bleeding. Id.

 At trial, Phillips admitted that "had he gone to the bedside of [Bramlett] and evaluated
her clinical condition, she would be alive today. Further, he admitted that, had he checked
his voicemail, he would have stayed at the hospital." Id. at *17. The court of appeals
concluded that this testimony should be treated as a conclusive, judicial admission on the
question of negligence and cause in fact of Bramlett's death. Id. at *16-18 (setting forth
factors used when determining whether admission is a quasi-admission or a judicial
admission). In reaching this decision, the court considered the following factors: First, the
statements were made during trial. Id. at *17. Second, Phillips's statement that had he
checked his voice-mail, he would have stayed at the hospital and Bramlett would be alive
today, ran contrary to his defensive theory that he was not negligent. Id. The court further
noted that "[g]iving conclusive effect to these declarations is consistent with the public policy
that it would be unjust to allow a party to rely on one factual defense at trial and then, after
the trier of fact found against him, to argue a different factual defense." Id. at *17-18. 
Finally, the court found that Phillips' admissions did not destroy Bramlett's position. Id. at
*18.

 Similar to Phillips, in the present case, Dr. Medina judicially admitted negligence and
causation. First, her testimony was given at trial. Second, Dr. Medina's defense theory at
trial was that she was not negligent. Nevertheless, Dr. Medina expressly admitted that it
was her duty to ensure proper positioning of her patient to avoid injury. On direct
examination by her own attorney, she admitted that a doctor should not place a hot IV bag
under a person's arm and that such action would breach the standard of care. See Grider,
83 S.W.3d at 245-46 (doctor admitted negligence when he testified that "it would fall below
the standard of care for a doctor to cut a brachial plexus nerve when he thought he was in
the stellate ganglion," and doctor admitted these precise actions occurred). Dr. Medina
further admitted that the IV bag was the cause of Hart's injury. She stated that Hart was
diagnosed with a burn in the exact location as the IV bag, and that regardless of the heat
source, the IV bag that she placed under Hart's harm was warm and caused Hart's burn. 

 Much of the testimony recited above was elicited on direct examination by Dr.
Medina's own attorney. Moreover, formal declarations in open court by a party's attorney
that are clear, deliberate, and unequivocal can also constitute judicial admissions. Isern v.
Watson, 942 S.W.2d 186, 200-201 (Tex. App.-Beaumont 1997, pet. denied). In this case,
Dr. Medina's attorney made arguments in closing that, if not sufficient themselves as judicial
admissions, at the least support our conclusion that Dr. Medina's statements at trial were
deliberate, judicial admissions. 

 Moreover, in conducting a harm analysis, we are entitled to consider how the
erroneously admitted testimony was used during trial. During closing, Dr. Medina's counsel
emphasized her admissions on standard of care and causation, and he further argued that
Dr. Diggdon's testimony was unnecessary because of Dr. Medina's admissions. 
Considering Dr. Medina's arguments at trial, public policy supports our conclusion that Dr.
Medina's statements on standard of care, breach, and causation were judicial admissions. 
Dr. Medina should not be able to resurrect a defense on appeal that she wilfully failed to
assert below. 


 Finally, although Dr. Medina claims that Dr. Diggdon's testimony was the only
evidence that the IV bag was hot-an issue that clearly does not require expert
testimony-the Harts both testified as much. Further, after arguing that expert testimony was
unnecessary, Dr. Medina's attorney detailed the non-expert evidence demonstrating that
the bag was hot when Dr. Medina placed it. He also referenced the Harts' testimony
regarding statements by Dr. Medina's nurse and tried to discredit the testimony. 

IV. Conclusion

 Assuming, without deciding, that the trial court erred in admitting Dr. Diggdon's
testimony, we find that such error was harmless and did not probably cause the rendition
of an improper judgment. Tex. R. App. P. 44.1(a). Accordingly, we affirm the trial court's
judgment. 


 ____________________________

 GINA M. BENAVIDES,

 Justice


Opinion delivered and filed

this the 5th day of July, 2007.




 
1. See Tex. Rev. Civ. Stat. art. 4590i, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, §
10.09, 2003 Tex. Gen. Laws 847, 884 (now codified at Tex. Civ. Prac. & Rem. Code § 74.401 (Vernon ). 
Because this suit was filed on August 1, 2003, and article 4590i was repealed effective September 1, 2003,
former article 4590i governs this case. Id.
2. Dr. Medina initially recommended a lithotripsy, which uses shock waves to pulverize kidney stones
non-invasively.
3. Dr. Medina performed a pyelolithotomy, an invasive surgery where the doctor surgically removes
the kidney stone. 
4. Article 4590i, section 14.01 governs qualifications of experts and the time frame for a court's pre-trial
ruling on admissibility. Tex. Rev. Civ. Stat. Ann. art. 4590i § 14.01. Unlike section 13.01, which provides for
dismissal if a plaintiff fails to comply with deadlines for serving an expert report, section 14.01 does not provide
for dismissal of a case for lack of a qualified expert. Id. 
5. Again, we note that Dr. Medina did not ask the trial court to dismiss the case pre-trial under section
13.01 of article 4590i for the absence of an expert report. Rather, she filed a motion to strike Dr. Diggdon as
Hart's expert as unqualified, specifically requesting only that the trial court "prohibit Dr. Diggdon from
testifying." She re-asserted this objection at trial. Therefore, we cannot presume that this case would not
have gone forward past the point of an expert review of the case because Dr. Medina did not ask for
dismissal. We must review all the evidence in the record to determine if the trial court's ruling on Dr. Medina's
objection was reversible error.

6. Dr. Medina points to only the fact that the "jury's verdict, which imposes liability on Dr. Medina based
on unqualified expert testimony, establishes harm." Such a statement could be made by an appellant in any
case and is not sufficient under the Texas Rules of Appellate Procedure to support review.