**CITY OF HOUSTON, Petitioner,**

v.

**SAM P. WALLACE AND CO. et al., Respondents.**

No. B–8192.

Supreme Court of Texas.

July 18, 1979.

Rehearing Denied Sept. 25, 1979.

Robert M. Collie, Jr., City Atty., Dale M. Tingleaf, Asst. City Atty., Houston, for petitioner.

Wyckoff, Russell, Dunn & Frazier, Robert L. Adams and Clare K. Steadham, Houston, for respondents.

Fulbright & Jaworski, Sim Lake, Houston, for Precision Insulation Co.

POPE, Justice.

City of Houston complains of the trial court's denial of its motions for mistrial and new trial. It says the basis for the motions was that Maurice Little, its co-plaintiff in a suit against Sam P. Wallace Company, Inc., secretly made a settlement with Wallace Company just before final arguments and then changed his posture by arguing that City of Houston, rather than defendant Wallace Company, was at fault in causing City of Houston's property damages and Little's personal injuries. While the jury was deliberating and counsel for City of Houston was absent from the courtroom, Little asked for a nonsuit. City of Houston did not discover the secret settlement nor learn of the nonsuit until one week later. The jury answered special issues adversely to both City of Houston and Little and the trial court rendered judgment that City of Houston take nothing. The court of civil appeals affirmed the judgment. 574 S.W.2d 864. We reverse the judgments of the courts below and remand the cause for another trial.

City of Houston sued Wallace Company and Precision Insulation Company, Inc. for property damages to its water cooling plant at the Houston Intercontinental Airport which resulted from an explosion and fire on October 19, 1971. Wallace Company had a contract with City of Houston to construct certain additions to its water cooling plant and Precision Insulation had a subcontract with Wallace Company to perform certain insulation work. Little, an employee of Precision Insulation, in a separate suit against Wallace Company, claimed damages for personal injuries he suffered in the same accident. The trial court consolidated the City's suit seeking damages for its property loss and Little's suit seeking damages for his personal injuries. Wallace Company's answer asked for indemnity against Precision Insulation and Precision Insulation prayed for judgment against City of Houston. The trial court aligned City of Houston and Little as co-plaintiffs and Wallace Company and Precision Insulation as defendants.

Little, an insulator, was assigned the task of insulating some water pipes that were located a few feet above a large metal box-like container in which was housed an electrical switch gear. Little had to use a roll scaffold to climb on top of the switch gear box so he could reach the water pipes that he had to insulate. While Little was standing on a board that someone had laid across the top of the switch gear box, there was a series of electrical explosions followed by a fire which destroyed the City's plant and seriously injured Little.

At trial, all the parties had closed their evidence and the court was preparing its charge when Little and Wallace Company settled their differences. They did not tell the court or City of Houston about the settlement; so the court submitted special issues by which both City of Houston and Little sought to establish Wallace Company's negligence. Another series of issues asked about Precision Insulation's negligence. Other issues inquired about contributory negligence on the part of City of Houston and also Little. Each party was allowed forty-five minutes to argue to the jury, and each party used the time allotted. City of Houston made the first argument, followed in turn by Little, Wallace Company and Precision Insulation.

City of Houston opened the jury arguments by explaining its theory for fixing liability upon Wallace Company. It read to the jury and urged answers to certain specific issues that would fix responsibility upon Wallace Company.[1] Counsel closed his argument by explaining to the jury that Little's attorney would follow him, saying: "The reason that is done that way is because the Rules of Civil Procedure provided that we have the burden of proof, Mr. Barker [Little's counsel] and I . . . after the defendants tell their story we get to have a few more minutes with you to rebut anything they may have said."

Little's counsel began his argument by explaining why his client was not contributorily negligent and by urging the severity of Little's injuries. He then wholly switched his direction. He argued that Wallace Company, his ostensible adversary, did not know about the presence of the dangerous condition, did not fail to inspect the premises in the area of the switch gear, did not operate the water lines that ran over the switch gear box, did not fail to perform its work in a good and workmanlike manner, and that the evidence would not support a finding against Wallace Company on those issues. Little's argument also urged the defeat of his co-plaintiff's right of recovery against Wallace Company by his argument that City of Houston was operating the electrical equipment in an overloaded condition, as Wallace Company had contended during trial. Little's counsel told the jury that the overloading issue should be answered against City of Houston, "We do," and that similar answers should be made to the accompanying negligence and proximate cause issues. Little's counsel also argued that the jury should answer affirmatively the issue which asked if the water was being run through the pipes at the request and for the benefit of City of Houston. The jury returned a favorable verdict for the defendants, Wallace Company and Precision Insulation, as Little had argued.

The judgment form that was circulated for approval of the attorneys one week after the jury returned its verdict contained a recital that Little had announced to the court during jury deliberations that he wished to take a nonsuit. That was when City of Houston learned for the first time about the settlement and the nonsuit. It promptly filed a motion asking for a mistrial. At the mistrial hearing, counsel for

---

1. Special Issue No. 12

Do you find from a preponderance of the evidence that the chilled water lines over the area of the switchgear box were operated by Sam P. Wallace & Co. prior to the occurrence in question without being insulated? Special Issue No. 15

Do you find from a preponderance of the evidence that by allowing the chilled water lines over the switchgear to be operated prior to being insulated, the contractor, Sam P. Wallace Co., failed to perform its work in a good and workmanlike manner?

plaintiff Little admitted that "the real consideration for my settlement is the fact that I would not argue negligence against Sam P. Wallace Company." The court overruled the motion for mistrial and later overruled City's motion for a new trial based on the same complaint.

At the commencement of the trial, both City of Houston and Little had actions against Wallace Company as their common adversary. The trial court properly and fairly cast them as plaintiffs after the consolidation of the two cases. Rule 174(a), Tex.R.Civ.P. The fairness of the alignment turned into unfairness when, unknown to City of Houston, its ally and confederate became its adversary. City of Houston, under an adversary proceeding, had the burden to develop and present its own case, but it did not have the additional burden to defeat the Trojan Horse that had secretly invaded City's camp. Counsel for Little switched sides and then undermined his co-plaintiff's and his own case as alleged.

In Degen v. Bayman, 200 N.W.2d 134 (S.D.1972), the plaintiff settled with one co-defendant who then changed positions and argued for the plaintiff and against his co-defendant, saying:

I have no doubt, ladies and gentlemen, that in this case you're going to give Billy Degen a verdict and believe me, in this argument and particularly in a case like this, I think the attorneys have a real responsibility to be candid with the jury, and I'm trying to be with you because this is a very serious case.

There isn't any doubt in my mind but what you're going to give Billy Degen a verdict. There isn't any doubt in my mind that it's going to be a substantial one.

In reversing the case, the court said:

Not knowing the motive for the evaporation of adversary vigor between plaintiff and Bayman, this benevolent candor coming from a joint tortfeasor could only appear to the jury as a shattering admission.

The protective order was a proper exercise of discretion. However, the responsibility to assure a fair trial is continuous. The court should not have allowed it to be used as a collusive advantage. When that appeared, a limited rescission was necessary to let the adversary process put the issues in perspective.

■■■ Little's counsel had no business making an argument to the jury at all. After his settlement with Wallace Company, Little had no further claim against anybody and no other party had any claim against him. Findings on Little's issues in no way would affect the claims for indemnity. This was not a comparative negligence case. Candor required a disclosure to the court that Little had no further interest in the case; so the trial judge would not have submitted meaningless special issues that inquired about Wallace Company's negligence toward Little, Little's contributory negligence, and his damages. *Connell v. B. L. McFarland Drilling Contractor,* 162 Tex. 345, 347 S.W.2d 565 (1961); *California Products, Inc. v. Puretex Lemon Juice, Inc.,* 160 Tex. 586, 334 S.W.2d 780 (1960); *State v. Society for Friendless Children,* 130 Tex. 533, 111 S.W.2d 1075 (1938); *Gatto v. Walgreen Drug Co.,* 61 Ill.2d 513, 337 N.E.2d 23 (1975).

Defendant Wallace Company contends that City of Houston waived its complaint because it failed to object to the jury argument, relying upon *Turner v. Turner,* 385 S.W.2d 230 (Tex.1964), which holds that jury arguments may be cured by instruction after a timely objection is sustained. In *Turner,* counsel heard and knew about the error but failed to object. The error in this instance was a secret one; it was concealed from City of Houston. Just what objection the City might have made except that it was surprised, is not suggested. As soon as City of Houston learned that Little had secretly settled and had been dismissed, it moved for a mistrial, and it was in that post-trial hearing that it learned for the first time that "the real consideration for my settlement is the fact that I would not argue negligence against Sam P. Wallace Company."

■ While the jury was deliberating and at a time when counsel for City of Houston was temporarily out of the courtroom, Little's counsel orally asked the court to grant a nonsuit in Little's action against Wallace Company. City of Houston was not informed about the dismissal. We are not impressed with Little's reasoning that City of Houston should not be heard to complain about the oral procedure because it should have remained in the courtroom. The spirit, if not the letter, of Rule 72, Tex.R.Civ.P., is that motions of any character shall be in writing over the certificate of counsel that a copy was either mailed or delivered to the adverse party. A trial court may entertain a number of oral motions in the course of a trial, but one which disposes of parties to an action, should indeed be in writing and with notice to the parties. *See Barton v. Pacific Emp. Indem. Co.,* 532 S.W.2d 128, 130 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Three Bee Inv. Corp. v. Galveston-Houston Co.,* 166 S.W.2d 382 (Tex.Civ.App. —Galveston 1942, no writ). Whether in writing or not, City of Houston was entitled to know about the dismissal of its co-plaintiff as well as the settlement.

■ Rule 164, Tex.R.Civ.P., forbids a nonsuit after a plaintiff has introduced all of his evidence other than rebuttal evidence. The term "nonsuit" correctly means a voluntary dismissal of an action which may be refiled. What Little actually requested was a dismissal of his action with prejudice, since his settlement deprived him of the right to refile his action. Of significance, however, is not the terminology but Little's secret settlement, secret dismissal, and his undisclosed shift of loyalty from City of Houston to the Wallace Company which he had sued.

■ It is our conclusion that the trial court erred in refusing to grant City of Houston's motions for mistrial and for new trial by reason of the misalignment of the parties at the argument stage of the trial. The error was such a denial of the rights of City of Houston as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 503, Tex.R.Civ.P. From the whole record we conclude that the jury received a distorted and unfair portrayal of the posture of the parties. Little's counsel told the jury panel on voir dire examination that the evidence would show that Wallace Company was in control of the premises and the construction and that it was the one who was negligent. That was the crucial issue in the case and the one which City of Houston and Little developed during trial. The trial court allowed each of the two plaintiffs only three strikes in the jury selection, and they made their strikes together. They acted together in the presentation of the facts. Just before counsel for City of Houston completed its opening jury argument, he explained to the jury that the City and Little had the burden of proof and for that reason Little's counsel would argue when City concluded. Then, explained the City's counsel, the defendants would be permitted to tell their story. Little's counsel, however, did not argue that he and City of Houston should win. He argued that defendant Wallace Company should win. The jury, apparently believing that Little had been at last convinced of the error of his own contentions, agreed with him and returned a verdict that defeated both Little's and City of Houston's causes of action. We conclude that Little's posture in the case during jury argument was a subterfuge. His real mission was not to win as a plaintiff, but to defeat his co-plaintiff's action which he did.

■ Texas adheres to the rule that information about settlement agreements should be excluded from the jury, because the agreement may be taken as an admission of liability. *McGuire v. Commercial Union Ins. Co.,* 431 S.W.2d 347 (Tex.1968); 2 McCormick & Ray, Texas Law of Evidence § 1142 (2d ed. 1956). We recently recognized that an exception to that general rule will be made when a plaintiff and one defendant settle a cause on an agreement that the settling defendant will receive back a percentage of what the plaintiff recovers from the other defendant. *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex. 1977). Defendant General Motors com-

plained and this court held that it should have been permitted to introduce evidence of the "Mary Carter" agreement so it could discredit witnesses for the settling defendant who actually had a financial stake in the success of the plaintiff's recovery. Defendant Wallace Company insists that the settlement agreement it made is not a Mary Carter agreement, for which reason, *General Motors Corporation v. Simmons* should not control this case. The Mary Carter agreements and the misalignment of the plaintiffs in this case both possess a more basic vice. Both of them are false and misleading portrayals to the jury of the real interests of the parties and witnesses.

██ The other defendant in this cause, Precision Insulation, insists that we should affirm the take nothing judgment against it, because it did not participate in the settlement between Little and Wallace Company and because there is no evidence of its negligence. While it is true that it did not participate in the settlement, it was the beneficiary of the arguments by Little's counsel that it was City of Houston who was in control of the premises on the occasion of the explosion and fire.

The trial was not a fair adversary proceeding.

We reverse the judgments of the courts below and remand the cause to the trial court for another trial.