COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


NUMBER 13-06-638-CV



ROBERT HOLEMAN TWIST, Appellant,


v.



MC ALLEN NATIONAL BANK, Appellee.

 


NUMBER 13-07-105-CV



IN RE: ROBERT HOLEMAN TWIST

 




On petition for writ of mandamus and on appeal from 


the 92nd District Court of Hidalgo County, Texas.


 


O P I N I O N



Before Justices Yañez, Garza, and Vela (1)


Opinion by Justice Yañez


 

 Robert H. Twist filed an appeal (2) and a mandamus (3) proceeding arising from
orders issued by the trial court in cause number C-3690-99-A. (4) We have
consolidated the appeal and mandamus proceeding for purposes of briefing and oral
argument. Appellees/Real Parties-in-Interest have moved to dismiss the appeal and
the mandamus proceeding and are seeking sanctions as a result of both
proceedings. As discussed below, we dismiss the appeal, deny the mandamus
petition, and grant Real Parties' Motions for Sanctions under Texas Rule of
Appellate Procedure 52.11. (5) No motion for rehearing in either the appeal or the
mandamus proceeding will be entertained, nor will any further proceedings in this
Court arising from trial court cause number C-3690-99-A. 

I. Background


 This case has a long and arduous history. We will begin with a history of the
litigation and a discussion of the proceedings before this Court. 

A. Trial court cause no. C-3690-99-A's origin

 In 1995, appellant/relator Robert H. Twist recovered a personal injury
settlement for $175,000.00, which he deposited into an account at McAllen National
Bank (the "Bank"). At the time, Twist was married to Brenda Griggs, but he
allegedly instructed the Bank not to distribute any funds from the account to her
without his prior approval. Griggs transferred the money out of the account and then
filed for divorce. Griggs later filed for Chapter 13 Bankruptcy on March 1, 1999, in
the United States District Court for the Northern District of Texas, Dallas Division. 
 On July 12, 1999, after Griggs was already in bankruptcy, Twist brought suit
against the Bank in Hidalgo County District Court, trial court cause number C-3690-99-A, seeking to recover the funds. The Bank filed a third-party action against
Griggs seeking contribution and indemnity. Griggs filed an answer, but she did not
notify the parties that she was under the protection of the automatic bankruptcy stay. 
B. Twist agrees to settle with the Bank, but later he purports to revoke his
consent.


 On October 9, 2000, Twist and the Bank agreed to settle the case for
$75,000.00. Twist and the Bank appeared before the trial court and dictated their
settlement agreement into the record. (6) Twist consented to the settlement under
oath on the record. However, the trial court did not enter a judgment at that time. 
 On November 21, 2000, the parties appeared again before the trial court. 
Twist was sworn and stated under oath that he was revoking his consent to the
settlement. Twist stated that he objected to the settlement because the Bank's
proposed settlement agreement did not admit liability and contained indemnity
language. The Bank stated that it intended to seek enforcement of the settlement
agreement. However, no judgment was entered at that time.

C. The Bank orally moves to enforce the settlement agreement, and the
trial court dismisses Twist's claims with prejudice.


 On January 19, 2001, the parties again came before the trial court for a
status conference. At the hearing, the Bank made an oral motion to enforce the
settlement agreement. Twist's attorney did not object to the Bank's use of an oral
motion to enforce the settlement agreement, nor did he object to lack of notice that
the court would hear such a motion. The Bank's attorney represented that the Bank
had tendered the money to Twist. Nevertheless, Twist again stated that he was
revoking his consent to the settlement agreement. The court asked the parties to
submit proposed orders. 

 That same day, the court issued an "Order Enforcing Settlement Agreement,"
dismissing Twist's claims with prejudice. It stated that the Bank had moved to
enforce the settlement agreement, that the court considered the transcript of the
Rule 11 agreement, and that Twist had untimely revoked his consent to the
agreement by revoking it after the court had already approved the settlement. 

 Twist sought reconsideration of the January 19, 2001 order dismissing his
claims with prejudice, but the trial court denied the motion. According to the docket
sheet, there were some motions filed seeking distribution of the settlement funds,
although these motions are not contained in the mandamus record, and it is not
clear what relief was sought or why. The trial court held a hearing on October 11,
2001. At that hearing, Twist admitted to the court that he had received the
settlement check and had cashed it. The trial court orally stated that the case would
be dismissed, even though the court had already dismissed all of Twist's claims with
prejudice. On April 29, 2002, the trial court issued a second order dismissing Twist's
claims with prejudice. Twist did not immediately appeal either of the orders
dismissing his claims with prejudice. 

D. Griggs is discharged from bankruptcy, and Twist seeks appellate
review (the "Twist I appeal").


 Almost two years later, on April 6, 2004, Griggs was discharged from
bankruptcy. Shortly thereafter, on May 3, 2004, Twist filed an appeal from the April
29, 2002 order (the "Twist I appeal"). (7) This Court held that Twist's notice of appeal
had been due on May 29, 2002 (thirty days from the April 29, 2002 order) but was
not filed until May 3, 2004. (8) Thus, the appeal was untimely. (9) Twist also failed to pay
the filing fee. (10) We notified Twist of these defects, which he failed or was unable to
cure. (11) 

 This Court dismissed the appeal because of Twist's failure to comply with the
appellate rules. (12) We noted that Twist had sent a letter stating his opinion that the
April 29, 2002 order was interlocutory, but we did not express any opinion on that
issue. (13) 

E. Twist attempts to resurrect his claims in the trial court.

 On the same day that Twist filed his appeal with this Court, he filed an
"amended" petition in the trial court. He attempted to add the Bank's lawyers as
defendants: the firm of Kittleman, Thomas, & Gonzales, L.L.P., and its named
partners, Ray Thomas and Veronica Gonzales ("Kittleman"). Twist alleged against
the Bank and these additional defendants the same claims that were previously
dismissed with prejudice. 

 Twist argued that the trial court still had jurisdiction over the case because
the orders dismissing his claims against the Bank with prejudice were not final
orders. Specifically, Twist argued that because any claims against Griggs were
subject to the bankruptcy stay, the trial court's orders dismissing his claims had no
effect on the Bank's third-party claim against Griggs. He reasoned that because the
Bank's claim against Griggs remained pending, the trial court retained jurisdiction
over the case. 

F. The defendants file pleas to the jurisdiction, which the trial court
grants, and Twist seeks mandamus relief ("Twist I mandamus").


 The Bank and Kittleman filed pleas to the jurisdiction, asserting that the trial
court's plenary power had long since expired. They argued that Griggs was never
a party to the lawsuit because any filing against her during the pendency of the
bankruptcy stay was merely a void act. Thus, the orders dismissing Twist's claims
were final orders, and the trial court's plenary power had expired. Alternatively, the
Bank and Kittleman argued that the trial court's order disposing of Twist's claims
also disposed of their third-party claim by implication. 

 The trial court granted the Bank and Kittleman's pleas to the jurisdiction and
struck Twist's "pleadings" on October 4, 2004. On December 14, 2004, Twist
sought a writ of mandamus (the "Twist I mandamus"), seeking to compel the trial
court to vacate its order granting the pleas to the jurisdiction. He asserted that there
was not a final order because Griggs was never nonsuited or severed from the case,
and the orders enforcing the settlement agreement did not dispose of that claim
during the pendency of the bankruptcy stay. We denied mandamus relief on
December 21, 2004, without an opinion on the merits. (14)

G. Twist persists in the trial court despite giving up his appeal and losing
in the mandamus proceeding.

 

 Notwithstanding this Court's denial of mandamus relief and the untimely
attempt to appeal, Twist refused to give up. Twist filed motions on September 19,
2006 and October 12, 2006, asking the trial court to declare its previous orders void. 
He argued that the orders enforcing the settlement agreement were void because
(1) he did not consent to the settlement, (2) the Bank did not file any pleading to
support an action to enforce the settlement, and (3) he did not have any notice of
the Bank's intent to enforce the settlement agreement. Alternatively, he argued that
the orders were interlocutory because they did not dispose of the Bank's claims
against Griggs (the same arguments rejected by the trial court and this Court). The
trial court denied these motions on November 8, 2006.

H. Twist again seeks relief from this Court in the current proceedings
("Twist II appeal" and "Twist II mandamus").

 Still undeterred, Twist filed a second round of proceedings with this Court
seeking review. First, he filed a notice of appeal on November 14, 2006, seeking
review of the trial court's November 8, 2006 order; the appeal was docketed as
appellate cause number 13-06-00638 (the "Twist II appeal"). The clerk of this Court
sent Twist a letter, stating that there appeared to be no final order that would confer
jurisdiction on the Court. Twist responded that he agreed and would be filing a writ
of mandamus. Twist never filed a brief in the appeal.

 Second, Twist filed a mandamus petition, docketed as appellate cause
number 13-07-0105-CV (the "Twist II mandamus"). This petition is almost identical
to the Twist I mandamus petition. First, Twist argues that the January 19, 2001 and
April 29, 2002 orders enforcing the settlement agreement are void because the
Bank did not file a pleading with the trial court asserting a claim for breach of
contract. Second, he argues that the January 19, 2001 and April 29, 2002 orders
are void because they impliedly disposed of the Bank's claim against Griggs while
Griggs was in bankruptcy. Third, he argues that these orders were interlocutory
because they did not dispose of the third-party action against Griggs. Therefore, he
claims that the trial court's plenary power did not expire and that the trial court had
jurisdiction over his amended petition.

I. The Bank and Kittleman file motions to dismiss and for sanctions in the
appellate proceedings, and this Court orders Twist to show cause.


 The Bank filed a motion to dismiss and for sanctions in the Twist II appeal,
asserting that the appeal is frivolous and filed solely for the purpose of delay and
harassment. The Bank seeks $78,659.50 in attorney's fees, and the motion is
supported by an affidavit stating that this is the amount of reasonable and necessary
attorney's fees that it has incurred since 2004. 

 On March 14, 2007, this Court issued an order requiring Twist and his
counsel, Mr. Stephen T. Leas, to show cause why they should not be sanctioned. 
In that order, we consolidated the appeal and the mandamus for purposes of
briefing and oral argument and set the matter for hearing on April 4, 2007. Twist
filed a response to the Bank's motion for sanctions. The Bank then filed a reply in
both the appeal and the mandamus proceeding, reasserting its arguments in favor
of sanctions.

 Kittleman moved for sanctions on April 3, 2007. This motion was filed after
this Court issued its show cause order and set a hearing on the Bank's motion for
sanctions and to dismiss the appeal. (15) The Kittleman motion adopts the Bank's
motion for sanctions and reply brief by reference. In addition, Kittleman asks that
this Court construe the Bank's motion for sanctions as one under both Texas Rule
of Appellate Procedure 45 (applicable to frivolous appeals) and under Texas Rule
of Appellate Procedure 52.11 (sanctions in original proceedings). Kittleman asks
for reasonable and necessary attorney's fees in the amount of $15,000.00 incurred
since May 2004, which were supported by an affidavit by Raymond Cowley. 

 The parties appeared before this Court and presented arguments on the
sanctions motions on April 4, 2007.

II. Twist II Mandamus 

 We will address the merits of the mandamus petition first because it is fully
briefed. To obtain mandamus relief, the relator must demonstrate that the trial court
clearly abused its discretion and that the relator has an inadequate remedy by
appeal. (16) 

 A trial court abuses its discretion if "it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law." (17) With respect
to matters committed to the trial court's discretion, the relator must demonstrate that
the trial court could have only reached one conclusion. (18) The reviewing court cannot
disturb the trial court's ruling unless it is shown to be arbitrary and unreasonable. (19)
"On the other hand, review of a trial court's determination of the legal principles
controlling its ruling is much less deferential. A trial court has no 'discretion' in
determining what the law is or applying the law to the facts." (20) If the trial court
clearly fails to analyze or apply the law correctly, such failure will constitute an abuse
of discretion. (21)

 The relator must also show that his or her appellate remedy is inadequate. (22) 
The Texas Supreme Court has explained that this element requires a practical and
prudential analysis, requiring consideration of both public and private interests. (23) 
"An appellate remedy is 'adequate' when any benefits to mandamus review are
outweighed by the detriments. When the benefits outweigh the detriments,
appellate courts must consider whether the appellate remedy is adequate." (24) 
However, the Supreme Court has also held that where the trial court issues a void
order, the relator need not show that an appellate remedy is inadequate to obtain
mandamus relief. (25) 

 Twist raises several arguments that he contends result in a live proceeding
currently before the trial court, over which the trial court refused to recognize
jurisdiction. First, he argues that the trial court's judgments enforcing the settlement
agreement are void; thus, the trial court never disposed of his claims. Second, he
argues that, if the order enforcing the settlement agreement is not void, it is
nevertheless an interlocutory order because the Bank's third-party action against
Griggs was never finally determined. Thus, the trial court erroneously denied that
it had jurisdiction over his claims. 

A. Trial court's jurisdiction to enforce the settlement

 Although it is now 2007, Twist still complains of the trial court's orders from
2001 and 2002 enforcing his settlement with the Bank. He argues that because he
revoked his consent before judgment was rendered, the trial court lacked jurisdiction
to enter an agreed judgment on the settlement agreement. He also argues that the
trial court could not enforce the settlement as a contract because the Bank never
filed a motion to enforce the settlement. He concludes that the trial court's orders
enforcing the settlement agreement are void; therefore, he is entitled to mandamus
relief to force the trial court to acknowledge jurisdiction over his amended pleading
filed on May 3, 2004. 

 Twist revoked his consent before judgment was entered. Therefore, Twist
is correct that the trial court did not have authority to enter an agreed judgment. (26) 
If a court purports to render an agreed judgment after consent has been withdrawn,
the judgment is void. (27) 

 However, an agreed judgment is different than a judgment enforcing a
settlement agreement. (28) The Texas Supreme Court has held that, although a trial
court has no authority to enter an agreed judgment, it can certainly enforce a
settlement agreement even if one party has revoked consent, if there are proper
pleadings and proof to support enforcement. (29) The question becomes, then, what
pleadings and proof are sufficient?

 Twist argues that a judgment enforcing a settlement agreement is void if
there are no pleadings asserting a cause of action to enforce the agreement. He
apparently asserts that the Bank was required to file a counter-claim alleging breach
of contract. He asserts that a judgment enforcing a settlement can only be rendered
after a trial on the merits, whether by summary judgment, bench trial, or jury trial. 
Because the Bank made an oral motion to enforce the settlement agreement, but
never filed a pleading to support such a cause of action, he reasons that the
judgment enforcing the settlement agreement is void. 

 For support, in his original petition for writ of mandamus, he quotes alleged
language from the Texas Supreme Court's decision in Padilla, asserting that the
supreme court held that "if a party seeks to enforce a settlement agreement, it must
invoke the Court's jurisdiction over the subject matter by filing the proper pleadings,
as in any suit based in contract, and any order entered without proper pleadings is
void." (30) This Court has reviewed the Padilla case numerous times, and this
language does not appear in the Padilla opinion. (31) Moreover, this Court has not
located a single case holding that a judgment enforcing a settlement agreement
rendered without supporting pleadings is void, as opposed to voidable. (32) 

 Twist's argument is contrary to the relevant case law and the rules of
procedure relating to motions, waiver of pleading defects, and trial by consent. This
Court has held that a party seeking enforcement of a settlement agreement when
consent is revoked must enforce it as a written contract. (33) We have stated that this
separate breach of contract claim is subject to the "normal rules of pleading and
proof." (34) We have advised that parties seeking enforcement should assert their
breach of settlement agreement claims in the underlying action while the trial court
still has jurisdiction. (35) We have further stated that the claim should be asserted
through an amended pleading or counter-claim. (36) 

 Although an amended pleading is the preferred method of raising such a
claim, this Court has also held that a motion to enforce settlement is a sufficient
pleading to allow a trial court to render judgment enforcing the settlement. (37) As long
as the motion recites the terms of the agreement, states that the other party has
revoked its previously stated consent to the agreement, and requests the trial court
to grant relief, the motion is sufficient. (38) In other words, if the motion satisfies the
general purpose of pleadings, which is to give the other party notice of the claim and
the relief sought, it is sufficient to allow the trial court to render judgment enforcing
the settlement. (39) 

 The "normal rules of pleading" include rule 21, which allows oral motions to
be made at a hearing. Rule 21 provides:

 Every pleading, plea, motion or application to the court for an order,
whether in the form of a motion, plea or other form of request, unless
presented during a hearing or trial, shall be filed with the clerk of the
court in writing, shall state the grounds therefor, shall set forth the
relief or order sought, and at the same time a true copy shall be
served on all other parties, and shall be noted on the docket. (40)


Numerous cases have approved the use of oral motions presented at a hearing or
at trial. (41) The oral motion to enforce the settlement was effective to invoke the
court's power to enforce the agreement provided that the oral motion contained
enough information to allow Twist to meaningfully respond. (42) 

 The Bank made an oral motion to enforce the agreement, and the Bank
provided the trial court with the settlement agreement which was dictated into the
record. The Bank argued that Twist revoked his previously expressed consent to
the agreement. The Bank requested relief. Thus, the oral motion had all the
necessary elements. (43) 

 Even if the oral motion was insufficient, the trial court's order enforcing the
settlement would not be void. The lack of a pleading or sufficient notice of a hearing
does not make the judgment void. In general, the failure to point out a defect or
omission in pleadings results in a waiver of the objection. (44) Additionally, the failure
to object to insufficient notice of a hearing waives the issue. (45) Certainly if the issue
can be waived, the judgment cannot be void. 

 Twist appeared at the status hearing. He did not object to the oral motion,
to the lack of a written pleading, or to the lack of sufficient notice that the court was
considering the Bank's motion to enforce the agreement. In fact, instead of
objecting, Twist argued his defense to enforcement of the agreement. (46) Twist's
complaints about the procedures followed were waived. 

 For the foregoing reasons, we hold that the trial court had subject-matter
jurisdiction to render judgment enforcing the settlement agreement; its order was not
void. For the reasons discussed in the following sections, even if we agreed that the
trial court erred in enforcing the settlement agreement, Twist's complaints are two
years too late.

B. Finality of the order enforcing the settlement

 Twist next argues that, if the order enforcing the settlement was not void, it
was nevertheless not a final order disposing of all the parties and claims. Twist
argues the court's January 19, 2001 and April 29, 2002 orders enforcing the
settlement agreement were interlocutory because they could not and did not dispose
of the Bank's third-party action against Griggs while Griggs was in bankruptcy. 

 We agree that a court cannot render a judgment against a debtor in
bankruptcy while a stay is in place. Judgments, including orders dismissing a debtor
from the suit, are void if rendered against a debtor under the protection of a
bankruptcy stay. (47) Moreover, a judgment against a debtor's co-defendants is not a
final, appealable judgment unless the debtor is severed from the action because the
judgment does not dispose of all the parties. (48) However, Twist's mandamus record
demonstrates that his original petition and the Bank's third-party action were filed
after Griggs was already under the protection of the bankruptcy court. This changes
things significantly.

 The bankruptcy stay protects debtors from the commencement or
continuation of an action against them. (49) This Court has expressly held that a suit
filed against a debtor already under the protection of a bankruptcy stay is a nullity (50)
--the trial court does not acquire jurisdiction over an action commenced during the
automatic stay. (51) Therefore, the Bank's third-party action against Griggs while she
was in bankruptcy had no legal effect, and Griggs never became a party to the
action in the trial court. (52) The trial court's order enforcing the settlement dismissing
Twist's claims against the Bank, whether one considers the final order to be the
January 19, 2001 or the April 29, 2002 order, was not a void order. Rather, it was
a final order that disposed of all parties and claims. (53)

C. Twist's pleadings and the trial court's rulings subsequent to the orders
enforcing the settlement 


 Because the trial court's orders enforcing the settlement were not void and
constituted a final judgment disposing of all parties and claims, we next determine
what effect Twist's subsequent filings had on the proceedings below. Giving Twist
the benefit of the doubt, and assuming that the April 29, 2002 order enforcing the
settlement was the final order in the case, the trial court's plenary power expired, at
the latest, on May 29, 2002. (54) 

 Absent any post-judgment motions, Twist's notice of appeal was due on May
29, 2002. (55) Twist, however, did not appeal the April 29, 2002 order until May 3,
2004. For this reason, this Court rejected Twist's first appeal as untimely. (56) Twist
sought to amend his pleadings to resurrect his claims and add new defendants on
May 3, 2004, more than two years after the final judgment in the case. Because the
trial court's jurisdiction had expired, Twist's amended petition and all of Twist's later
filings in the trial court were a nullity. (57) 

 We recognize that the Bank and Kittleman were put in the untenable position
of choosing to ignore Twist's filings after the trial court's plenary power expired or
respond to his improper "pleadings." In this case, however, the Bank and
Kittleman's responsive filings were unnecessary, as were the trial court's rulings on
Twist's subsequent filings, because the trial court's plenary power had expired. (58) 
Accordingly, we deny Twist's petition for writ of mandamus in cause number 13-07-00105-CV. 

D. Sanctions for conduct in the Twist II mandamus proceeding under
Texas Rule of Appellate Procedure 52.11


 The Bank and Kittleman have moved for sanctions in cause number 13-07-0105-CV, alleging that the mandamus petition was groundless and filed in bad
faith. (59) We issued an order directing Twist to show cause why he should not be
sanctioned. Recognizing that we must "exercise the discretion afforded us by Rule
52.11 with caution and only after careful deliberation," (60) we find that sanctions are
appropriate for the following reasons.

 Texas Rule of Appellate Procedure 52.11 prohibits attorneys from filing
petitions for writ of mandamus in "bad faith:"

 On motion of any party or on its own initiative, the court may--after
notice and a reasonable opportunity to respond--impose just
sanctions on a party or attorney who is not acting in good faith as
indicated by any of the following:


 (a) filing a petition that is clearly groundless;

 

 (b) bringing the petition solely for delay of an underlying
proceeding;

 

 (c) grossly misstating or omitting an obviously important and material fact
in the petition or response; or

 

 (d) filing an appendix or record that is clearly misleading because
of the omission of obviously important and material evidence
or documents. (61)

 Texas Disciplinary Rule of Professional Conduct 3.03(a)(1) states that a
lawyer "shall not knowingly . . . make a false statement of material fact or law to a
tribunal." (62) Subsection (a)(4) of that rule provides: "A lawyer shall not
knowingly . . . fail to disclose to the tribunal authority in the controlling jurisdiction
known to the lawyer to be directly adverse to the position of the client and not
disclosed by opposing counsel." (63) The comments expand on the prohibitions:

 Legal argument based on a knowingly false representation of law
constitutes dishonesty toward the tribunal. A lawyer is not required to
make a disinterested exposition of the law, but should recognize the
existence of pertinent legal authorities. Furthermore, as stated in
paragraph (a)(4), an advocate has a duty to disclose directly adverse
authority in the controlling jurisdiction which has not been disclosed by
the opposing party. The underlying concept is that legal argument is
a discussion seeking to determine the legal premises properly
applicable to the case. (64) 


 Additionally, we find guidance in the Texas Lawyer's Creed and the
Standards for Appellate Conduct promulgated by the Texas Supreme Court. The
Texas Lawyer's Creed provides "a clear directive about how lawyers are to conduct
themselves in respect to the legal system, the courts, clients and other lawyers." (65) 
 The Creed states, "I am passionately proud of my profession. Therefore, 'My word
is my bond.'" (66) Additionally, the Standards for Appellate Conduct provide:

 As professionals and advocates, counsel assist the Court in the
administration of justice at the appellate level. Through briefs and oral
submissions, counsel provide a fair and accurate understanding of the
facts and law applicable to their case. . . .  3. Counsel should not
misrepresent, mischaracterize, misquote, or miscite the factual record
or legal authorities. (67)


 In In re Colonial Pipeline Co., this Court ordered the relators to show cause
why they should not be sanctioned for failing to disclose controlling case authority
and failing to distinguish it from the case at issue. (68) We held that "such failure to
disclose pertinent adverse authority might well be a failure of Relators to deal in
good faith with this Court and a breach of professional ethics," and we held that
such failure would likely be sanctionable under Texas Rule of Appellate Procedure
52.11(a). (69) At the show cause hearing in the case, however, relators satisfactorily
explained that the case law at issue was not controlling and had not been discussed
for that reason. (70) Other courts, however, have sanctioned a relator's counsel for
grossly misstating the law and the facts of cited case precedent, finding that
petitions based on such statements are groundless and brought in bad faith. (71) 

 As noted above, Twist's mandamus petition quotes language from the Texas
Supreme Court's opinion in Padilla v. La France. (72) His petition states the following,
verbatim:

 In Padilla v. LaFrance, 907 S.W.2d 454, 461 (Tex. 1995), the
Supreme Court held that "if a party seeks to enforce a settlement
agreement, it must invoke the Court's jurisdiction over the subject
matter by filing the proper pleadings, as in any suit based in contract,
and any order entered without proper pleadings is void."


We have reviewed that case, and no such statement appears in the opinion. 

 At the hearing to show cause, in response to the Court's questions about the
Bank's oral motion to enforce the settlement agreement, Twist's attorney
represented the supreme court's holding in Padilla by initially repeating the position
espoused in his petition: "You have to file a written motion to enforce a settlement
agreement. It has to be a written motion. That's what Padilla says." With respect
to his failure to accurately quote Padilla, Twist's attorney argued that the quotations
around the cited language from the Padilla opinion were a "typographical error." He
stated, "It's not a quote, but that's what the court held in essence, was that without
a written motion, without following a normal suit to enforce the contract the way
you're supposed to do it in writing, with notice, it's void, period." 

 Justice Benavides then stated that the Court had read Padilla and was
concerned that Padilla had been misrepresented to the Court: 

 So are you telling this Court that Padilla says that you need to have
a written motion in order to have subject matter jurisdiction? Because
this Court looked at Padilla and it does not state what you said in your
brief. And one of the reasons that the Court can sanction you under
the appellate procedure Rule 52.11 is that if you are misstating or
omitting an obviously important and material fact in the petition or the
response. So if you're misquoting Padilla and that is the basis of your
allegations to this Court of why this Court wants jurisdiction, then we
have some problems[,] Mr. Leas.


Confronted with the Court's awareness of Padilla's holding, Twist's counsel
backtracked: "Padilla said that you have to have, you have to follow as any suit in
contract. And there's a string of cases that say that." After the hearing, Twist
amended his petition to delete the references to the quoted language from Padilla.

 Twist's arguments regarding the January 19, 2001 and April 19, 2002 orders
focus solely on whether those orders are "void." Even if the quotations were
accidentally placed in the text, Padilla does not state, explicitly or otherwise, that
orders enforcing a settlement agreement rendered without supporting pleadings are
"void," nor does the opinion suggest such a rule. (73) Padilla discusses the
requirements for enforcing a settlement agreement in a few broadly worded
sentences: "An action to enforce a settlement agreement, where consent is
withdrawn, must be based on proper pleading and proof. In this case, for example,
Padilla filed a counterclaim seeking enforcement of the parties' agreement, and both
sides moved for summary judgment on that claim." (74) Nowhere does the Padilla
opinion state that the failure to properly plead and prove a breach of a settlement
agreement renders any judgment enforcing the agreement void, nor does the
opinion state that an oral motion to enforce a settlement agreement is insufficient. 
Moreover, this Court has not located any authority to support Twist's position that
the orders enforcing the settlement are "void." 

 More troubling, however, is Twist's argument that the trial court's orders
enforcing the settlement agreement did not dispose of the entire case. In their pleas
to the jurisdiction, the Bank and Kittleman argued that the Bank's third-party claim
against Griggs was a void action because it was taken, unwittingly, in violation of the
automatic stay in bankruptcy. Twist's mandamus petition does not address, or even
acknowledge, this argument, nor does it discuss controlling authority on this point
that is directly contrary to Twist's argument. Specifically, Twist does not attempt to
distinguish our decision in Padrino Maritime v. Rizo, where we expressly held that
a suit filed during an automatic stay in bankruptcy is a void act that does not invoke
the trial court's jurisdiction over the party in bankrutpcy. (75)

 Finally, the allegations in the Twist II mandamus are identical to those argued
in the Twist I mandamus, which we denied. When confronted with this assertion at
the show cause hearing, Mr. Leas stated:

 The mandamus action in 2004 was a different action. It had different
points in it. The mandamus action in 2004 was based on, number
one, abuse of discretion, dismissed case for want of jurisdiction
because of loss of plenary power because there was no final
judgment in the case. . . . And the other was abuse of discretion
because third-party defendant breaches of bankruptcy and there was
no dismissal or severance of third-party claim.


As can be gleaned from our discussion of the arguments above, these are the
identical issues raised in the current mandamus proceeding, the Twist II mandamus. 
 Although we might have overlooked the misquotation and mischaracterization
of Padilla as negligent error, (76) given the additional complete failure to cite and
analyze the law governing critical points in Twist's argument and the refusal to
accept this Court's disposition of arguments previously presented to this Court, we
can only conclude that Twist's counsel knowingly and in bad faith brought this
petition for writ of mandamus, which we find to be groundless. (77) 

 We are, however, mindful that any sanctions must "bear a direct relationship
to the offensive conduct." (78) Groundless litigation "unduly burdens the other parties
involved and the judicial system itself." (79) Accordingly, we grant the Bank's and
Kittleman's motion for sanctions as to Twist's counsel, Stephen Leas. Mr. Leas is
ordered to pay attorney's fees to the Bank in the amount of $2,500.00 and to
Kittleman in the amount of $2,500.00. Such fees are to be paid within 30 days of
the date of this opinion and are to be applied to real parties' attorney's fees
expended in responding to the Twist II mandamus. (80) This Court has also incurred
expenses in the form of court-reporting fees for the show cause hearing. Mr. Leas
is ordered to pay $365.15 to the Clerk of this Court as reimbursement for those
expenses, within 30 days of the date of this opinion.

 Additionally, we order Mr. Leas to attend a continuing legal education course
in advanced civil procedure, to be completed within 180 days of the date of this
opinion. Mr. Leas shall submit written proof of his completion of the required course
upon completion, provided, however, that such proof must be submitted no later
than 200 days from the date of this opinion. (81) Finally, we order Mr. Leas to cease
and desist from filing frivolous motions and pleadings in this Court and the trial
court. (82) Ya Basta! (83)
 Failure to comply with this Court's opinion may be punishable
by contempt. No motion for rehearing will be entertained in this matter.

III. Twist II Appeal

 Twist never filed an appellate brief in the Twist II appeal and has not moved
to dismiss that appeal. The Bank has moved to dismiss the appeal as untimely and
for sanctions. We dismiss the appeal but decline to order further sanctions. As stated above, any appeal in this matter was required to have been filed
following the April 29, 2002 order, which was the final judgment in this case. 
Because Twist abandoned the Twist I appeal, he has lost any available appellate
remedy. Accordingly, we dismiss his appeal in cause number 13-06-00638-CV as
untimely. 

 The Bank's motion for sanctions asserts: (1) that the appeal is untimely; (2)
that Twist has pursued an appeal which he knew the Court did not have jurisdiction
to hear; (3) that Twist failed to disclose to the Court the prior events in this case; (4)
that Twist has ignored well-settled adverse law without arguing for a change in the
law; (5) that Twist is attempting to present unpreserved error; and (6) that Twist is
trying to re-litigate issues previously decided. 

 Texas Rule of Appellate Procedure 45 governs sanctions for a frivolous
appeal. (84) It provides: "If the court of appeals determines that an appeal is frivolous,
it may--on motion of any party or on its own initiative, after notice and a reasonable
opportunity for response--award each prevailing party just damages. In determining
whether to award damages, the court must not consider any matter that does not
appear in the record, briefs, or other papers filed in the court of appeals." (85) Because 
Twist has not filed appellate briefs requiring a response from the Bank, we decline
to order sanctions in connection with the appeal. 

IV. Conclusion

 We deny the Twist II Mandamus in cause number 13-07-0105-CV and order
sanctions as set forth above pursuant to Texas Rule of Appellate Procedure 52.11. 
We dismiss the Twist II Appeal in appellate cause number 13-06-638-CV as
untimely and decline to order further sanctions in the appeal. No motion for
rehearing in either cause number will be entertained.


 

 LINDA REYNA YAÑEZ,

 Justice




Vela, J., concurring in the result only,

without separate opinion.


Opinion delivered and filed this the

5th day of December, 2007. 
1. The Honorable Rose Vela concurs in the result only, without separate opinion.
2. Twist v. McAllen Nat'l Bank, et al., appellate cause number 13-06-638-CV. 
3. In re Twist, appellate cause number 13-07-105-CV. Respondent is Hon. Ricardo Rodriguez, Jr.,
presiding judge of the 92nd District Court of Hidalgo County, Texas.
4. Normally we need not reference the trial court's cause number in the body of an opinion. However,
Robert H. Twist has filed numerous lawsuits and appellate proceedings arising out of the same set
of facts. The multiplicity of Twist's actions remind this Court of the multi-headed monster from Greek
mythology, the Lernaean hydra: cut off a head, and several heads grow back in its place. We wish
to make absolutely clear which litigation we are addressing because we intend this opinion to
completely dispose of the hydra and all its heads. 
5. Tex. R. App. P. 52.11.
6. See Tex. R. Civ. P. 11. 
7. Twist v. McAllen Nat'l Bank, No. 13-04-613-CV, 2005 Tex. App. LEXIS 5226, at *1 (Tex.
App.-Corpus Christi July 7, 2005, no pet.) (per curiam). 
8. Id. 
9. Id. 
10. Id. 
11. Id. at *1-2. 
12. Id. at *2. 
13. Id. at *1-2. 
14. In re Twist, No. 13-04-0660-CV, 2004 Tex. App. LEXIS 11546, at *1 (Tex. App.-Corpus Christi,
Dec. 21, 2004, orig. proceeding) (mem. op.).
15. At the hearing on the order to show cause, Twist's counsel waived any further notice or right to have
a separate hearing to show cause.
16. In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004). 
17. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1990) (quoting Johnson v. Fourth Court of Appeals,
700 S.W.2d 916, 917 (Tex. 1985)). 
18. Id. at 840. 
19. Id. 
20. Id. 
21. Id.
22. In re Prudential, 148 S.W.3d at 136. 
23. Id.
24. Id. 
25. In re Sw. Bell Tel. Co., 35 S.W.3d 602, 605 (Tex. 2000).
26. See Padilla v. La France, 907 S.W.2d 454, 461-62 (Tex. 1995); Ford Motor Co. v. Castillo, 200
S.W.3d 217, 223 (Tex. App.-Corpus Christi 2006, pet. filed); Neasbitt v. Warren, 105 S.W.3d 113,
117 (Tex. App.-Fort Worth 2003, no pet.). 
27. Woods v. Woods, 167 S.W.3d 932, 933 & n.2 (Tex. App.-Amarillo 2005, no pet.). 
28. Neasbitt, 105 S.W.3d at 117. 
29. Padilla, 907 S.W.2d at 461-62. 
30. In his amended petition for writ of mandamus in the Twist II mandamus, Twist deleted this citation
and quote.
31. See generally Padilla, 907 S.W.2d 454.
32. Cf. Hermida v. Hermida, No. 04-96-00869-CV, 1998 Tex. App. LEXIS 532, at *8-9 (Tex. App.-San
Antonio 1998, no pet.) (not designated for publication) (unlike an agreed judgment rendered without
consent, a judgment enforcing a settlement agreement is not void and subject to collateral attack). 
33. Citgo Ref. & Mktg., Inc. v. Garza, 94 S.W.3d 322, 330 (Tex. App.-Corpus Christi 2002, no pet.). 
34. Id. 
35. Id. 
36. Id.
37. Castillo, 200 S.W.3d at 224; Neasbitt, 105 S.W.3d at 118. 
38. Neasbitt, 105 S.W.3d at 118. 
39. Castillo, 200 S.W.3d at 224.
40. Tex R. Civ. P. 21 (emphasis added).
41. See EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 91 (Tex. 1996) (enforcing Rule 11 agreement
regarding consideration of plaintiff's evidence based on oral request for enforcement made at a
hearing). The Texas Supreme Court has held that "[a] trial court may entertain a number of oral
motions in the course of a trial, but one which disposes of parties to an action, should indeed be in
writing and with notice to the parties." City of Houston v. Sam P. Wallace & Co., 585 S.W.2d 669, 673
(Tex. 1979). However, in that case, the City of Houston's co-plaintiff, Little, settled with the defendant
without telling the court or the City. Id. The charge was submitted to the jury, and without notice to
the City, Little shifted his arguments to assert that the City should not recover against the defendant. 
Id. While the jury was deliberating, and the City's counsel was out of the courtroom, Little moved to
nonsuit its claims against the City. Id. The City did not learn about the nonsuit until a week later. Id. 
On appeal, the supreme court held that motions disposing of parties to a case should be in writing so
that all parties have notice. Id. However, that is not the case here. As discussed below, we have no
trouble concluding that Twist had notice that the Bank was seeking to enforce the settlement; Twist
and his counsel were present when the motion was made, and Twist's counsel did not object to any
lack of notice.
42. See Palo Pinto County v. Lee, 988 S.W.2d 739, 739-40 (Tex. 1998) (per curiam) (denying petition
for review but disapproving of language that oral motion to strike was not properly presented during
a hearing); see also In re N.S., No. 10-01-319-CV, 2004 Tex. App. LEXIS 1449, at *22 & n.5 (Tex.
App.-Waco Feb. 11, 2004, pet. denied) (mem. op.) (holding Rule 21 permits oral motions if presented
during a hearing); Miller v. Miller, No. 05-02-01903-CV, 2003 Tex. App. LEXIS 8800 (Tex.
App.-Dallas Oct. 15, 2003, no pet.) (mem. op.) ("[M]otions are neither required to be preceded by
three days' notice nor are they required to be in writing when they are presented during a hearing or
trial."). 
43. Neasbitt, 105 S.W.3d at 118. Moreover, we have no problem concluding that Twist had actual
notice that the Bank was seeking to enforce the settlement. See Castillo, 200 S.W.3d at 224-25
(holding that trial court's enforcement of settlement agreement was proper where plaintiffs filed a
motion to enforce, and Ford clearly had actual notice that the plaintiffs were seeking to enforce the
settlement). On November 21, 2000, the parties appeared before the trial court. Twist was sworn
in and stated under oath that he was revoking his consent to the settlement. The Bank stated at that
time that it intended to seek enforcement of the settlement agreement. Thus, Twist was on notice at
least as early as November 21, 2000 that the Bank was seeking to enforce the settlement agreement. 
On January 19, 2001, the parties again came before the trial court for a status conference. At the
hearing, the Bank made an oral motion to enforce the settlement agreement. Twist's attorney did not
object to the Bank's use of an oral motion to enforce the settlement agreement, nor did Twist object
to lack of notice that the court would hear such a motion. 
44. Tex. R. Civ. P. 90. 
45. Walker v. Gonzales County Sherriff's Dep't, 35 S.W.3d 157, 160 (Tex. App.-Corpus Christi 2000,
pet. denied).
46. Tex. R. Civ. P. 67 (trial by consent occurs when issues not raised by the pleadings are tried without
objection). 
47. Sanchez v. The Honorable Darrell Hester, 911 S.W.2d 173, 176 (Tex. App.-Corpus Christi 1995,
orig. proceeding). 
48. Id. at 177; Hood v. Amarillo Nat'l Bank, 815 S.W.2d 545, 547 (Tex. 1991). 
49. 11 U.S.C. § 362(a)(1); Hood, 815 S.W.2d at 547. 
50. Despite the fact that the Bank raised this exact argument in its plea to the jurisdiction after Twist
tried to resurrect his claims in 2004, Twist does not mention this argument at all in his mandamus
petition, nor does he try to distinguish this Court's decision in Padrino. 
51. Padrino Mar. v. Rizo, 130 S.W.3d 243, 247 (Tex. App.-Corpus Christi 2004, no pet.) (suit filed
during stay is "a void action"); see also Lovall v. Chao, No. 01-02-01019-CV, 2005 Tex. App. LEXIS
415, at *7 (Tex. App.-Houston [14th Dist.] Jan. 20, 2005, no pet.) (mem. op.); In re De la Garza, 159
S.W.3d 119, 121 (Tex. App.-Corpus Christi 2004, orig. proceeding) (refusing to resurrect void
judgment issued during bankruptcy proceedings after bankruptcy proceeding was dismissed);
Graham v. Pazos de la Torre, 821 S.W.2d 162, 164 (Tex. App.-Corpus Christi 1991, writ denied). 
52. See Padrino, 130 S.W.3d at 247. 
53. The Bank and Kittleman argue alternatively that the trial court's orders enforcing the settlement
agreement also disposed of the action against Griggs. Because the trial court never acquired
jurisdiction over Griggs, we need not discuss these arguments. Tex. R. App. P. 47.1.
54. Tex. R. Civ. P. 329b(f); In re Lynd Co., 195 S.W.3d 682, 685 (Tex. 2006) (holding that absent an
extension of post-judgment deadlines under rule 306a, the trial court's plenary power expires thirty
days after the judgment is signed). 
55. Tex. R. App. P. 26.1. 
56. Twist, 2005 Tex. App. LEXIS 5226, at *1. 
57. See In re Dickason, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding); see also Chemject Int'l,
Inc. v. Sw. Bell Tel. Co., No. 13-06-032-CV and 13-04-567-CV, 2007 Tex. App. LEXIS 586, at *11
(Tex. App.-Corpus Christi Jan. 25, 2007, pet. denied) (mem. op.). 
58. See State ex rel. Latty v. Owens, 907 S.W.2d 484, 486 (Tex. 1985) (per curiam) ("Judicial action
taken after a cause has expired is a nullity."); In re E.B.Y., No. 13-07-772-CV, 2007 Tex. App. LEXIS
5352, at *4 (Tex. App.-Corpus Christi July 5, 2007, no pet.) (mem. op) ; Chemject Int'l, Inc., 2007 Tex.
App. LEXIS 586, at *11.
59. See Tex. R. App. P. 52.11. 
60. See In re Lerma, 144 S.W.3d 21, 26 (Tex. App.-El Paso 2004, orig. proceeding).
61. Tex. R. App. P. 52.11.
62. Tex. Disciplinary R. of Prof'l Conduct 3.03(a)(1), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G
app. A (Vernon 2005) (Tex. State Bar R. art. X., § 9). 
63. Id. 3.03(a)(4). 
64. Id. cmt. 3. 
65. In re Hasbro, Inc., 97 S.W.3d 894, 897 n.2 (Tex. App.-Dallas 2003, orig. proceeding).
66. See Texas Lawyer's Creed, available at http://www.txethics.org/reference_creed.asp (last visited
Oct. 8, 2007). 
67. Texas Supreme Court, Standards for Appellate Conduct, available at
http://www.supreme.courts.state.tx.us/rules/conduct.asp; see also In re Hasbro, Inc., 97 S.W.3d at
897 n.2.
68. 960 S.W.2d 272, 273-74 (Tex. App.-Corpus Christi 1997, orig. proceeding). 
69. Id. 
70. See In re Colonial Pipeline Co., No. 13-97-808-CV, 1998 Tex. App. LEXIS 393 (Tex. App.-Corpus
Christi Jan. 22, 1998, orig. proceeding). 
71. See, e.g., In re Guevara, 41 S.W.3d 169, 171-74 (Tex. App.-San Antonio 2001, orig proceeding)
(per curiam) (sanctioning relator's counsel for misrepresenting the holdings of the San Antonio Court
of Appeals and the Texas Supreme Court). 
72. Padilla, 907 S.W.2d at 461-62. 
73. Id. at 461. 
74. Id. 
75. 130 S.W.3d at 247.
76. See In re Lerma, 144 S.W.3d at 29 (refusing to exercise discretion to impose sanction for
carelessness).
77. Tex. R. App. P. 52.11; see In re Lincoln, 114 S.W.3d 724, 728 (Tex. App.-Austin 2003, orig.
proceeding) (awarding sanctions after finding a "pattern of filing baseless motions and petitions"); In
re Guevara, 41 S.W.3d at 173 ("An attorney does not act in good faith when he presents false
statements to the court.").
78. In re Hasbro, Inc., 97 S.W.3d at 898; see also In re Lincoln, 114 S.W.3d at 728.
79. In re Lincoln, 114 S.W.3d at 728. 
80. Real parties have requested a substantially higher amount in attorney's fees. We have exercised
our discretion to award a lower amount, however, in order to compensate the Bank and Kittleman for
attorney's fees expended only in response to the mandamus and show cause order in this Court. 
This Court cautions Mr. Leas, however, that if any further filings are made with respect to trial court
cause number C-3690-99-A, we reserve the right to increase this amount as appropriate.
81. See In re Guevara, 41 S.W.3d at 174. 
82. See id. 
83. "Enough is enough!" See Holloway v. Fifth Court of Appeals, 767 S.W.2d 680, 686 (Tex. 1989) (orig.
proceeding) (Gonzales, J. dissenting) (dissenting from the denial of a mandamus petition in a case
that had been litigated for over ten years, stating "Ya Basta!"). 

84. Tex. R. App. P. 45
.
85. Id.